**Marian J. SNIDER,
Petitioner-Respondent,**

v.

**Homer K. SNIDER,
Respondent-Appellant.**

**No. KCD 29451.**

Missouri Court of Appeals,
Kansas City District.

July 31, 1978.

Motion for Rehearing and/or Transfer
Denied Aug. 28, 1978.

Application to Transfer Denied
Oct. 10, 1978.

Cedric Siegfried, Robert J. Wise, James Russell Ford, Independence, for respondent-appellant.

Thomas D. Cochran, Wm. D. Piedimonte, Joe F. Willerth, Independence, for petitioner-respondent.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ROBERT R. WELBORN, Special Judge.

Dissolution of marriage. Question is whether or not trial court erred in awarding wife $124,250 cash plus real property valued at $21,500 as her share of the marital property.

Marian J. Snider, petitioner below and respondent here, was married to Homer K. Snider, appellant, on August 1, 1954. After the marriage, both parties completed their education, Marian receiving a Master's Degree in music education and Homer a Doctorate in Veterinary Medicine. Three children were born to the marriage. The parties separated about October 25, 1975 and the petition for dissolution of marriage was filed January 27, 1976.

At the time of the separation and dissolution Doctor Snider engaged in the practice of Veterinary Medicine at Hamilton, Missouri. The exact course of his professional career does not appear. Mrs. Snider had been a housewife during the marriage except for four years between 1968 and 1971 when she was also employed as a teacher.

Doctor Snider had been in the cattle business with his father since 1947. Apparently the operation was conducted for at least some time on the father's farm.

In 1960, the Sniders began acquiring property. A 180-acre tract, known as the "Austin" property was acquired in 1960 for $7,200. Title was taken in the names of Keith and Marian Snider. In December, 1967, the 124-acre "Jamison" property was acquired for around $175 per acre with Keith Snider as grantee. Five acres off this tract were sold in 1970. In August, 1970, the 90-acre "Pickering" tract was purchased for $31,500.00. In February, 1972, the 280-acre "Farley" place was purchased for $56,000.00.

In December, 1971, Farview Cattle Co., Inc., was incorporated, with Keith and Marian, along with Keith's parents, Homer and Ava Snider, as incorporators. Homer and Ava transferred 192 acres of land, plus a ½ interest in an 80-acre tract and their interest in the cattle operation to the corporation in exchange for stock in the corporation. They also transferred $15,000 in cash. Marian and Keith transferred the Austin, Jamison, Pickering and Farley places to the corporation, along with Keith's interest in the cattle operation.

Just what stock was issued in these exchanges was not wholly clear. The attorney who handled the incorporation produced at the trial what purported to be the original stock record book of the corporation, showing that on December 1, 1971, 25 shares of stock were issued to Homer J. Snider, 25 to Ava Snider, 25 to Keith Snider, three certificates for eight shares each to Keith Snider as trustee for each of his minor children, and one share to the attorney. On February 1, 1972, there was filed with the Internal Revenue Service on behalf of the corporation an "Election by Small Business Corporation," signed by Marian, Keith, Homer and Ava, which recited that 70 shares of stock in the corporation were held by Keith, 50 by Marian and 40 each by Homer and Ava. The first income tax return for the corporation for the year ending January 31, 1973 recited that Keith was the owner of 75 shares of the corporation and Homer 25 shares. The original returns for the years ending January 31, 1974 and 1975 repeated this ownership statement. Sometime in 1975 or early 1976, Keith's attorney advised the accountant that the statements of ownership of the parents as owners of 25 shares each, Keith 26 shares and 24 shares as trustee for his children.

Following its incorporation, Farview Cattle Company, Inc., purchased additional land. In January, 1974, a 120-acre second "Farley" place was purchased for $36,000.00. Title was taken originally in the names of Keith and Marian and transferred immediately to the corporation. In December, 1975, the 225-acre "Ward" property was purchased for $93,000.00. In 1972, Keith and Marian sold a lot in Hamilton to one Brehm. The corporation later purchased the lot upon foreclosure.

The respondent produced testimony of two real estate appraisers as to the value of the various tracts as of May, 1976 as follows:

| | | Appraiser Simmons | Appraiser Shelman |
|---|---|---|---|
| 1. | Pickering | $ 81,615 | $116,000 |
| 2. | Farley | 228,350 | 186,000 |
| 3. | Jamison | 57,865 | 62,400 |
| 4. | Austin | 97,150 | 90,000 |
| 5. | Ward | 130,675 | 135,000 |
| 6. | Brehm | 5,700 | 8,500 |
| | Total | $601,355 | $597,900 |

These properties were subject to liens totalling approximately $200,000.00.

The appellant's opinion was that the value of the above property (except the Brehm tract) was in the aggregate $319,525.00. He also offered the only evidence as to the value of the land transferred by his parents to the corporation. He stated that his father was offered $150,000 for 152 acres in the 1950's. Another 40-acre tract was estimated to have a current value of $1,200 per acre.

A loan statement, dated December 17, 1975, furnished the First National Bank of Gallatin showed that the value of cattle and hogs then owned by the corporation was $172,900.00. They had been pledged as security for a loan to the corporation of $75,000 ($94,000 at the time of trial) by the bank.

During the marriage, the parties purchased some lots at Lake Viking for $15,600.00. Respondent valued this property at $21,500 at the time of trial. It was then still in the names of the parties as joint owners. The respondent showed a value of $4,236 on household furnishings.

At the dissolution hearing, not a great deal of attention was given appellant's veterinary practice. Income tax returns for 1973 showed a net income of $11,038.53 from veterinary practice.

At the conclusion of a hearing on May 13, 1976, the court announced that it would enter the decree of dissolution. It ordered appellant to pay respondent $350 per month as temporary maintenance and $150 per month for the support of a child. The court stated that the property division would be taken under advisement.

Thereafter, counsel for respondent moved the court to reopen the matter for further testimony as to the value of the real estate. On October 4, 1976, following withdrawal of respondent's original attorney, the matter was reopened and the testimony of respondent's real estate appraisers was presented, along with testimony of respondent.

On December 30, 1976, the trial court entered judgment, making permanent the former arrangement for child custody and support and dividing the marital property. The judgment recites that " * * * except for a certain lot on Lake Viking, essentially all of the marital property was conveyed to Farview Cattle Co., Inc., a Missouri corporation, and the unencumbered value of all of the marital property including the Lake Viking property and that property conveyed to Farview Cattle Co., Inc., is $270,000; * * *." The judgment further recites:

" * * * [A]fter considering all relevant factors, the Court determines that it would be just to equally divide the property between Petitioner and Respondent, but inasmuch as all of the marital property except for the Lake Viking property is now an asset of the Farview Cattle Co., Inc. be divided and that the above-described real property being marital property that has not been disposed of, it would be just that said real property be set apart to the Petitioner as her sole and separate property at a value of $21,500.00, one-half of the value to be deducted from Petitioner's monetary share of the marital property."

The Court awarded the Lake Viking property to respondent and also ordered appellant to pay to respondent $124,250 by June 30, 1977.

In this court, appellant's first point is that the trial court erred in its distribution of marital property because the cash figure of $124,250 "purported to be a quotient of the value of real property sold by a valid agreement of the parties four years previously * * * to the Farview Cattle Co." Argument in support of this point relies upon § 452.330, subd. 2(4), RSMo 1975 Cum.Supp., which excludes from marital property "property excluded by valid agreement of the parties." That provision has no bearing on this case, there having been no evidence of an agreement between the parties as to the status of the property insofar as marital rights are concerned. The transfers to the corporation changed the nature of the property in which the marital rights existed from real property to corporate stock. However, the trial court made no order which purported to transfer to respondent any property of the corporation and appellant's argument premised upon the theory that it did so is without merit.

What the trial court did was award the respondent the sum of $124,250 cash plus the Viking Lake property as her share of the marital property. The allowance of cash to the wife in lieu of the distribution to her of stock owned by her husband in a closed corporation has been held to be a proper exercise of the court's discretion in dividing marital assets. *Beckman v. Beckman*, 545 S.W.2d 300 (Mo.App.1976).

The record in this case leaves much to be desired on the issue of the value of appellant's interest in the corporation. See Krauskopf, Marital Property at Marriage Dissolution, 43 Mo.Law Rev. 157, 161–166 (1978). However, the burden is upon appellant to demonstrate that the award of the trial court was erroneous. Even if the theory of the trial court in making the distribution was erroneous, if the trial court reached the proper result upon any proper theory, its judgment will be sustained.

A large part of the difficulty in this case arises because of the question as to just what the appellant's share of the corporation was. The stock record book purported to show the issuance upon the formation of

the corporation of shares amounting to a 50% interest in appellant's parents and 50% in appellant and his children (plus one qualifying share), with no changes thereafter in the stock distribution. However, within two months of the date of the purported original stock issue, appellant signed a Small Business Corporation Election showing the ownership of 70 shares by him, 50 by respondent and 40 by each of his parents. Income tax returns showed a 75% interest in appellant and 25% in his parents. These returns were amended but only after the separation of the parties and following a discussion among them and their attorneys of the impending dissolution action. The evidence showed that appellant controlled the corporate activity. In fact, until the dissolution proceedings became imminent, he listed the assets of the corporation as his personal assets in loan statements to banks.

Furthermore, there was evidence that appellant was deliberately using the corporate structure in order to complicate respondent's problem of obtaining her share of the marital property in the event of a dissolution action.

In view of the disparate economic situation of the parties, a less than equal division of marital property, favoring the wife, is justifiable. Appellant has an active veterinary practice in addition to the farming and cattle operation carried on by the corporation. Respondent was educated to be a teacher and had used her training for a short time several years ago. She testified at the trial that she had made 28 inquiries about finding employment in her field but that the possibility of her employment appeared very limited.

Given the uncertainty as to the exact extent of appellant's substantial and controlling interest in the corporation, the evidence of a scheme to defeat respondent's marital property rights and the disparate economic situation of the parties, there has been no demonstration that the amount of the award to respondent is erroneous. Appellant attacks the amount as wholly unjust, unconscionable, unsupported by evi-

dence and shocking to the conscience, but does so on the grounds that there is no showing that appellant will be able to produce the amount awarded within the six-month period allowed by the trial court. The amount is relatively large, but appellant has substantial assets under his control and is undoubtedly better able to produce that sum than was the party in *Claunch v. Claunch*, 525 S.W.2d 788 (Mo.App.1975), where " * * * the court upheld an order granting all of the couple's meager property to one party and requiring that party to pay half the property's value in cash to the other, even though no cash existed." Krauskopf, op. cited, 43 Mo.Law Rev. at 159 (1978). The argument here advanced calls for no finding of error on the part of the trial court.

■ Appellant contends that the trial court erred in failing to make findings of fact and conclusions of law. Following the original hearing and the trial court's entry of a decree of dissolution and the temporary support and maintenance orders, counsel for respondent moved the court for "findings of fact and conclusions of law as provided by Supreme Court Rule." No express findings, other than the above recitals from the final judgment, were made. Appellant contends that the failure on the part of the trial court was error. He contends that he may rely upon the respondent's request because after the request of appellant's counsel, he was entitled to assume the trial court's compliance therewith and was not required to make a separate request on his own behalf. The difficulty with this position is that appellant overlooks the inadequacy, under the existing rule, of the request of respondent's counsel. Formerly Rule 73.01 required the trial court, upon request, to make "findings on any of the principal controverted fact issues." Presently Rule 73.01 requires specific factual findings only upon "such controverted fact issues as have been specified by counsel." Counsel for respondent in his motion stated no specific issues upon which findings were requested. If appellant wished the court to make findings on specific issues, it was his

duty, in view of the inadequacy of the request of respondent's counsel, to specify the issues upon which findings were sought. Having failed to do so, appellant is in no position to assert error.

 Appellant contends that the trial court erred in entering its December 29, 1976 judgment because it lost jurisdiction upon the expiration of 30 days from the entry of the May 13 judgment. As above noted, the May 13 judgment expressly reserved the issue of division of marital property. Obviously, the May 13 decree was not a final judgment on that issue. Whether or not additional evidence should have been heard was a matter for the trial court's discretion and the hearing of additional evidence has not been shown to have been an abuse of that discretion.

The judgment will be modified to fix the date for payment of the sum of $124,250 by appellant to respondent at six months following the date of the filing of the mandate of this court in the circuit court. Otherwise, the judgment is affirmed.

Judgment modified and affirmed, as modified.

All concur.