Angela M. DORMAN, Respondent,

v.

Daaron L. DORMAN, Appellant.

No. WD 60623.

Missouri Court of Appeals,
Western District.

Dec. 10, 2002.

Michael W. Blanton, Lee's Summit, MO,
for appellant.

Charles M. Fitzgerald, Warrensburg, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

Daaron Dorman (Father) appeals the trial court's judgment allowing his former wife, Angela Dorman (Mother), to move their son from Sedalia to Grand Forks, North Dakota. Father raises two points on appeal. First, he claims that the trial court erred in failing to issue written findings of fact and conclusions of law. Second, he claims that the trial court's determination that the proposed relocation is in their son's best interests is not supported by substantial evidence and is against the weight of the evidence. This court finds that the trial court's judgment complied with Rule 73.01 and the determination that the relocation is in the child's best interests is supported by substantial evidence and is not against the weight of the evidence. The judgment of the trial court is affirmed.

## Factual and Procedural Background

Mother and Father were married in June 1993. Their only child, Colin, was born on September 2, 1994. Mother and Father's marriage was dissolved on May 12, 1997. After the marriage was dissolved, Mother and Father shared joint legal custody of Colin. Mother had primary physical custody of Colin and Father was granted reasonable visitation, which was "no less than every other weekend, every other holiday in alternating years, and other times when the parties agree with reasonable notice." Mother also suggested that Father have visitation with Colin one day each week and one week during the summer. At the time of the dissolution, both Mother and Father lived in Sedalia.

In October 1999, Mother and Colin moved to a different home in Sedalia in anticipation of Mother's marriage to John Carns, a staff sergeant in the United States Air Force. Mother notified Father before the move and he had no objection. Shortly after the marriage in February 2000, however, Mother's landlord informed her that the family needed to move out of the home because the landlord did not allow the family's dog. Because it was the only housing they could obtain on short notice, Mother, Colin, and Sgt. Carns moved to Whiteman Airforce Base. Before the move, Mother called Father to tell him that she and Colin were moving. Father did not object to the move but told Mother she would have to bring Colin to Sedalia for his visitation because he was not going to drive twenty miles to pick up his son. Mother agreed, and Father continued to visit with Colin one day a week and every other weekend.

In August 2000, Sgt. Carns was sent on a one-year assignment to South Korea. Before he left, he learned that he would be reassigned to Grand Forks, North Dakota, in October 2001. When he learned of the transfer, Sgt. Carns tried to receive permission to return to Whiteman Airforce Base because he did not want to cause problems between Mother and Father or harm Colin. There were no positions open for him at Whiteman Air Force Base, however.

In April 2001, Mother's attorney sent a letter to Father informing him that she intended to relocate Colin to Grand Forks. Father then filed a motion for an order preventing relocation of a minor child, under § 452.377.7, RSMo 2000.[1] As required by the statute, Father attached an affidavit

1. All statutory references are to the Revised Statutes of Missouri 2000.

to his motion stating that relocation should be prohibited because (1) he currently enjoys a close and meaningful relationship with Colin; (2) he would lose much of his relationship time with Colin if Colin relocates to Grand Forks; (3) it would not be in Colin's best interest to deny him regular and frequent contact with Father; (4) Colin would not have frequent, continuing, and meaningful contact with Father if Colin relocates to Grand Forks; and (5) it would not be in Father's or Colin's best interests to permit relocation.

A trial was held on August 20, 2001. Following the trial, the court entered its judgment granting Mother permission to relocate Colin to Grand Forks. The trial court's parenting plan awarded Father visitation during all of Colin's winter vacations, alternating spring vacations if the vacation is at least three days long, summer vacation from the second Sunday following the last day of school until July 31, alternating Thanksgivings, and every Father's Day. The court ordered Mother to pay for all of Colin's transportation costs for Father's summer and winter visitations and the parties to split transportation costs for all of the other visitation periods. Father filed this appeal.

### Standard of Review

This court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "The *Murphy v. Carron* standard ... does not stand for the proposition that if 'substantial evidence' and the 'weight of the evidence' could support an alternative judgment the judgment must be reversed[.]" *Dixon v. Dixon*, 62 S.W.3d 589, 594 (Mo.App.2001). Instead, "only when the judgment rendered is not supported by

'substantial evidence' or is 'against the weight of the evidence' must the judgment be reversed." *Id.* This court views the evidence and all reasonable inferences therefrom in the light most favorable to the judgment and disregards all contrary evidence and inferences. *Cullison v. Thiessen*, 51 S.W.3d 508, 511 (Mo.App. 2001).

### Judgment Complied With Rule 73.01

In Father's first point, he claims that the trial court erred by failing to issue detailed findings of fact and conclusions of law. Father argues that the trial court was required to make detailed findings of fact and conclusions of law to support its determination that relocation was in Colin's best interest because, prior to the presentation of evidence, Father asked the court to make "its findings of fact and conclusion of law." The trial court stated that it was denying Father's request because the request was not in writing.

■ Rule 73.01 sets forth when the trial court's duty to set forth findings of fact and the legal grounds for its decision is triggered:

> If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.

> The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.

Contrary to the trial court's ruling in this case, Rule 73.01 does not require that a party's request for findings of fact and the

legal grounds for the court's decision be in writing.

■ With regard to a request for findings of fact, however, Rule 73.01 does require the request to specify the controverted fact issues on which the party is seeking findings. Father's request did not specify any fact issues on which he was seeking findings. Where a party fails to specify the issues upon which findings are sought, the request for findings of fact is inadequate and the court's failure to issue findings of fact is not erroneous. *Dardick v. Dardick*, 670 S.W.2d 865, 867 (Mo. banc 1984).

Acknowledging that his request was insufficient to trigger the court's duty under Rule 73.01 to issue findings of fact, Father argues instead that his request was sufficient to trigger the court's duty under § 510.310.2. Section 510.310.2 provides:

At or after the trial, the court shall render such judgment as it thinks right upon the law and the evidence. If any party shall so request before final submission of the case, the court shall dictate to the court reporter, or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded; and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues. All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached.

Under § 510.310.2, the court has a duty to make "findings on any of the principal controverted fact issues" if a party makes a general request for findings of fact. Unlike Rule 73.01, § 510.310.2 does not require the party requesting findings of fact to specify the issues on which findings are sought.[2] Thus, Rule 73.01 and § 510.310.2 are in conflict, because if § 510.310.2 controls, Father's request for findings of fact was sufficient to require the court to make findings on any of the principal controverted fact issues. If Rule 73.01 controls, however, Father's request for findings of fact was insufficient and the court had no duty to make any findings of fact.

■ Article V, § 5, of the Missouri Constitution authorizes the Supreme Court to " 'establish rules of practice and procedure for all courts,' " and these rules are to " 'have the force and effect of law.' " *State ex rel. Union Elec. Co. v. Barnes*, 893 S.W.2d 804, 805 (Mo. banc 1995) (quoting Mo. CONST. art. V, § 5). As a result, the Supreme Court rules " 'supersede all statutes and existing court rules inconsistent therewith.' " *Id.* (quoting Rule 41.02). When a Supreme Court rule conflicts with a statute, "the rule always prevails if it addresses practice, procedure or pleadings." *Id.*

■ Rule 73.01 is a procedural rule in that it prescribes the procedure a party must follow to trigger the trial court's duty to make findings of fact. Therefore, Rule 73.01 prevails over § 510.310.2. *See id.* This finding is consistent with *Dardick*, 670 S.W.2d at 867, and *Snider v. Snider*, 570 S.W.2d 770, 774 (Mo.App.1978), cases from the Supreme Court and this court, respectively, which cite and rely solely on

---

**2.** Before 1975, Rule 73.01's provision concerning requests for findings of fact was identical to that found in § 510.310.2. *See* Rule 73.01 (1974). In *Snider v. Snider*, 570 S.W.2d 770, 774 (Mo.App.1978), this court compared this provision in the pre 1975 version of Rule 73.01 to the findings of fact provision in the current version of the rule. In doing so, this court implied that unlike the current version of the rule, the pre 1975 version of Rule 73.01 did not require a party to specify the factual issues upon which the party was requesting findings. *See id.*

Rule 73.01 to find that a party's general request for findings of fact is inadequate. Because Father's general request for findings of fact was insufficient to trigger the trial court's duty to make them, the trial court's failure to do so was not erroneous.

Father next argues that the trial court failed to issue detailed conclusions of law in accordance with his request at the start of the trial. Rule 73.01 provides that "[i]f a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded." Father contends that unlike requests for findings of fact, requests for conclusions of law under Rule 73.01 do not need to be made with specificity.

This court recognized a distinction between requests for the legal grounds for the trial court's decision and requests for the trial court's findings of fact in *Weiss v. Weiss*, 702 S.W.2d 948, 951 (Mo.App.1986). Noting the "bifurcated nature" of that portion of Rule 73.01,[3] this court held that a party's general request was insufficient to require the court to make specific findings of fact but was sufficient to require the trial court to make "a statement of the grounds for its ultimate decision." *Id.*

▉ In this case, Father asked the court to make its "conclusion of the law." The trial court stated at that time that it

was denying Father's request because the request was not in writing. Nevertheless, the court stated in its judgment:

> The Court, after considering the evidence presented by the parties and the pleadings herein, finds that Petitioner's proposed relocation of the party's minor son born to their prior marriage, namely Colin Michael Dorman, born September 2, 1994, social security number [ ] is made in good faith and is in the best interest of the minor child. The Court therefore finds that Petitioner has met her burden of proof as set forth in Section 452.377.9 RSMo.

From this statement, it is clear that the legal grounds for the court's decision to allow relocation are that Mother's proposed relocation was made in good faith and is in the best interest of the minor child and, therefore, Mother met her burden of proof to obtain permission to relocate under § 452.377.9. Although Father argues that the court was required to set out detailed conclusions of law indicating that the trial court considered each of the best interest factors set forth in § 452.375.2,[4] Rule 73.01 does not impose such a requirement. All that Rule 73.01 requires is that the court make a statement of the grounds for its ultimate decision.[5] The court did so in this case. Father's first point is denied.

---

**3.** At the time *Weiss* was decided, the language concerning requests for a statement of the grounds for the trial court's decision and findings of fact was found in Rule 73.01(a)(2). *Weiss*, 702 S.W.2d at 951.

**4.** Father contends that since the trial court did not make detailed conclusions of law concerning the best interest factors set forth in § 452.375.2, it is unclear whether the trial court even considered these factors in determining whether relocation is in Colin's best interest. This contention is without merit. The trial court is presumed to have known the

law and followed it in determining that relocation is in Colin's best interest. *See Haddock v. State*, 75 S.W.3d 872, 877 (Mo.App.2002).

**5.** Although in practice the trial court's statement of the grounds for its decision is commonly referred to as the court's "conclusions of law," it should be noted that Rule 73.01 does not use the term "conclusions of law" as do other rules. *See, e.g.,* Rules 24.035(j) and 29.15(j) (requiring that the trial court issue "conclusions of law on all issues presented" when ruling on a post-conviction motion).

**Judgment is Supported by the Evidence and is Not Against the Weight of the Evidence**

In his second point, Father claims that the trial court's determination that relocation is in Colin's best interests is not supported by substantial evidence and is against the weight of the evidence. In *Stowe v. Spence,* 41 S.W.3d 468, 469 (Mo. banc 2001), the Supreme Court stated that § 452.377.9 requires the court to determine whether "the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10." Father does not contest that Mother's request to relocate was made in good faith, nor does he contest that the relocation judgment complies with § 452.377.10. His sole complaint in this point concerns the court's determination that the relocation to Grand Forks is in Colin's best interests.

The Court in *Stowe* did not specify how to measure the child's best interests. After *Stowe,* however, this court, in *Cullison,* 51 S.W.3d at 511–12, and the Eastern District, in *Abernathy v. Meier,* 45 S.W.3d 917, 924 (Mo.App.2001), used the best interests factors set forth in § 452.375.2 to determine whether relocation was in the child's best interests. These factors are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. . . . ;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2.

◼ Applying the evidence to these factors, as to factor one, the evidence was that Mother wants to relocate Colin and Father does not want Colin to relocate. Although only Mother submitted a proposed parenting plan, § 452.377.2(5) required only Mother to do so. Factor one weighs neither for nor against relocation.

Concerning factor two, the needs of the child for a meaningful relationship with both parents and the parents' ability to actively perform their functions, Father alleges the evidence weighs against relocation because evidence at trial revealed that Mother had moved three times since the divorce and probably will continue to move every four to five years because of Sgt. Carns' career in the Air Force. Father argues that Mother's frequent moving calls into question her willingness to actively perform her function as Colin's mother because she is not providing a stable and consistent home for Colin. Father notes that in contrast, he has lived in the same home since the divorce and does not intend to move.

That Mother has moved Colin's residence in the past and may need to move in the future because of her husband's military career does not, by itself, indicate

instability, nor does it indicate that Mother is unwilling to actively perform her function as Colin's mother. The overwhelming evidence is that Mother has been Colin's primary caregiver since birth; Mother and Colin have a very close relationship and, in fact, the longest period Colin has been away from Mother since the dissolution is one week. Mother also has been the only parent who has taken Colin to the doctor and dentist and attended his parent-teacher conferences. Although Mother notified Father of these appointments and events, Father declined to attend them. Moreover, Father does not call Colin or send him cards or letters. Factor two weighs in favor of relocation.

Factor three is the interaction of the child with parents, siblings, and others who may significantly affect Colin's best interests. This court has discussed Colin's relationship with his parents in detail with regard to factor two. Aside from Colin's relationship with his parents, Father claims this factor weighs against relocation because the majority of Colin's extended family resides in Missouri. It is true that Colin's maternal grandmother, whom he sees on a weekly basis, Colin's paternal grandmother, whom he sees on a monthly basis, and Colin's paternal aunt and uncle, whom he sees occasionally, all live in the mid-Missouri area.

The evidence also shows, however, that Colin interacts well with his stepfather, and Mother, Colin, and Colin's stepfather "do things as a family." Colin's stepfather helps Colin with his homework, plays with Colin, mails Colin presents while he is overseas, and calls and talks to Colin every day. In addition, at the time of trial, Mother was three and one-half months pregnant with Colin's half-sister. While Colin's continued relationship with his extended family should be encouraged, his relationship and interaction with those persons who may *significantly* affect his best interests, namely, his stepfather and half-sister, weighs in favor of relocation.

As to factor four, which parent is more likely to allow the child frequent and meaningful contact with the other parent, Father maintains the evidence weighs against relocation because Mother changed residences twice without notifying Father by certified mail sixty days before the moves. Both Mother and Father admitted at trial that, at the time of the two previous moves, they were not aware of the statute requiring sixty days' notice before relocation. Also, Mother called Father before both moves and Father consented to the moves.

Moreover, the evidence shows that it was Mother who encouraged Father and Colin to spend more time together by suggesting that Father have an extra day of visitation with Colin during the week and by providing all of the transportation for this extra visitation. The evidence also indicates that Mother would continue to support Father and Colin's relationship. Mother proposed a parenting plan that allowed Father more specific time with Colin than he had under the original dissolution judgment, and the court's parenting plan does give Father more specified visitation time than he had before. Thus, viewing the evidence in the light most favorable to the trial court's judgment, factor four weighs in favor of relocation.

Concerning factor five, the child's adjustment to home, school, and community, Father alleges the evidence weighs against relocation because the majority of Colin's extended family resides in Missouri and Colin will be leaving the only community he has ever known. It is true that Colin has lived all of his life in the mid-Missouri area. At the time of trial, however, Colin was not yet seven years old. The evidence also indicates that Colin is capable of ad-

justing to a new home, school, and community, because, as Father admits, Colin is outgoing, does well in school, and makes friends easily. The evidence on this factor weighs neither for nor against relocation.

As to the remaining factors, factors six and eight are not applicable because no evidence of the parties' physical or mental health or Colin's custodial preference was introduced at trial. Factor seven, the parent's intention to relocate the principal residence of the child, obviously weighs in favor of Father because Mother intends to relocate Colin's principal residence. The significance of this factor in determining whether relocation is in a child's best interests is questionable, as this factor will always weigh against the party seeking to relocate. Nevertheless, when the evidence on all of the applicable best interests factors is considered, the determination that relocation is in Colin's best interests is supported by substantial evidence and is not against the weight of the evidence.

The judgment of the trial court is affirmed.

All concur.