Denise Marie CLASSICK,
Petitioner–Appellant,

v.

Charles Ray CLASSICK, Respondent–
Respondent.

No. 26211.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 16, 2005.

843

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for appellant.

James R. Sharp, Sharp & Bredesen, Springfield, for respondent.

KENNETH W. SHRUM, Judge.

Denise Marie Classick ("Mother") sought to relocate with her minor children from Missouri to Ohio.[1] Charles Classick ("Father") filed a motion to prevent such

---

1. Respondent filed a motion to dismiss the appeal which was taken with the case. Respondent's motion is hereby denied. *In re* *Marriage of Boyd,* 786 S.W.2d 626, 626–27 (Mo.App.1990).

relocation pursuant to section 452.377.[2] After an evidentiary hearing, the trial court ruled that Mother's proposed move would not be in the children's best interests. Mother appeals, claiming the trial court's judgment is against the weight of the evidence and the court improperly applied the statutory best interest factors. We disagree. We affirm.

### STANDARD OF REVIEW

■ A judgment granting or denying permission to relocate minor children is reviewed pursuant to the well-known standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *Swisher v. Swisher*, 124 S.W.3d 477, 480 (Mo.App.2003). Thus, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Cullison v. Thiessen*, 51 S.W.3d 508, 510 (Mo.App.2001).

■ We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment, disregarding contrary evidence and inferences. *Id.* at 511. "An appellate court should not set aside a judgment as being against the weight of the evidence, unless it firmly believes that the judgment is wrong, or the judgment is clearly against the logic of the circumstances." *Swisher*, 124 S.W.3d at 480[2].

### FACTS

Mother and Father were married in June 1992. Three children were born of the marriage. The eldest daughter, Chelsea, was born December 11, 1993, and twin daughters, Courtney and Catelynn, were born December 20, 1995. During the marriage, both before and after the children were born, the family moved often. The moves were primarily caused by Father's quest for better employment. When Chelsea was to begin the first grade, the family decided to move to Springfield, Missouri, with the avowed purpose of making the town their permanent home.

In June 2001, Mother met Don Heaney ("Heaney"). In August 2001, Mother and Father separated. Mother filed for divorce that same month, which was eventually granted in November 2002. Approximately six months later, Mother married Heaney. The couple was expecting their first child together in November 2003.

Mother sought to relocate with the minor children to the Cincinnati, Ohio, area where Heaney worked and lived. Heaney looked for employment in Springfield, but was unable to find a job that paid as well as his job in Ohio.

Via the divorce decree, Mother and Father were "awarded joint legal and joint physical custody of the minor children." Father's parenting time included the following: Three weekends of each month from 6:00 P.M. on Friday to 6:00 P.M. on Sunday; three nonconsecutive weeks during the summer; spring breaks in odd-numbered years; and rotating holidays.

In Mother's "Notice of Relocation" to Father, she proposed an alternate schedule if the children were allowed to move with her to Ohio. She offered the following parenting time changes: One monthly visit of four days that coincided with scheduled days off school; six weeks in the summer; and spring break every year. Mother also proposed changing the holiday schedule. For instance, she sought to change the parenting times during Easter and Independence Day whereby she exercised custody, instead of the rotating schedule.

---

**2.** All statutory references are to RSMo(2000), unless otherwise indicated.

Father timely filed his motion to prevent Mother's relocation. Father claimed that permitting relocation "is not in the best interests of the minor children, would be financially and physically burdensome on the parties and would make substantial and meaningful contact between Father and the minor children impossible." In its judgment, the court made extensive findings of fact and conclusions of law, determining that Mother's proposed relocation would not serve the best interests of Chelsea, Courtney, and Catelynn. This appeal followed.

### Point I: Best Interests Factors

█ In her first point on appeal, Mother alleges the trial court committed reversible error when it found that three statutory best interests factors weighed against her relocation. We disagree.

When a parent seeks to relocate the principal residence of a child, that party "shall have the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child." [3] § 452.377.9. In making its best interests determination, the trial court looks to the factors set forth in section 452.375.2. *Herigon v. Herigon*, 121 S.W.3d 562, 569 (Mo. App.2003). The applicable factors involved here are:

"(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

"(2) The needs of a child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

"(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

"(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

"(5) The child's adjustment to the child's home, school, and community."

§ 452.375.2.

As to the first and fourth factors, the court found that both weighed against relocation. Mother has not challenged those findings on appeal. As to the second factor, the court found:

"Although these two parents appear to be exemplary as far as their ability and willingness to perform their functions are concerned, [Father's] relationship with his children would be detrimentally affected if the children relocate. The record shows substantial contact between the children and their father since their birth and the needs of the children would not be met in that their contact with their father would not be frequent, continuing or meaningful if allowed to relocate.

"If allowed to move to Ohio, the children would grow to resent the 1,200 mile trip to and from Ohio every time they were to see their father. As the children develop into teenagers, [Father's] relationship with his children would be effectively eliminated due to the increased time the children will spend with friends, school activities and other ties to the new community.

"The Court does not feel that contact between the father and children one time per month would be appropriate in this case in light of the father's substantial involvement with the children's lives since birth. Furthermore, the Court finds that it would be naive of the mother to think that she and the children would be able to find four days per month to make a 1,200 mile trip to see

---

3. On appeal, there is no issue regarding Mother's good faith in proposing a relocation.

their father, as she proposes, for the next ten years and beyond. This factor weighs heavily against relocation."

Mother argues that the court's finding in this regard is based solely on the distance issue between Missouri and Ohio. Mother then argues that existing case law "does not view distance ... as a barrier to relocation." To support her argument, Mother cites case law wherein a parent was allowed to relocate out of state despite the impact the move would have on the other parent's visitation rights.

Mother's argument and supporting cases are less than persuasive. "Disputes concerning the relocation of children must be resolved *on their particular facts* rather than rigid application of rule." *Cullison,* 51 S.W.3d at 511[1] (emphasis supplied). Here, the particular facts of this case amply support the trial court's findings under the second factor.

Father's relationship with the children was one of extensive involvement. He was described as a "model father." After the divorce, Father bought a home that was seven houses away from the marital residence to be near the children. Father not only exercised his parenting time allotted via the divorce decree, he also spent time with the children on unexpected occasions, such as being with them on snow days. Father attended most of the children's extracurricular activities as well. In essence, via the parties' mutual actions, Father's parenting time with the children was not solely limited to that contained in the parenting plan. As aptly stated by Father in describing this mutual give and take, "[W]e have done a good job, I think, overall ... for the most part ... we'd move the schedules around to accommodate each other's needs."

As the evidence indicates, if the relocation were permitted, Father's relationship with the children would be effectively destroyed. He would not be involved with them on a day-to-day basis. He would not be able to attend any of their activities. Simply stated, he would barely see his children.

To counter this obvious impact, Mother points to several options for Father to see the children. Mother proposes that once per month the children would travel to Missouri. Mother ignores case law that holds frequent travel, such as that proposed, can be deleterious to the children and runs contrary to their best interests. *See, e.g., In re S.E.P. v. Petry,* 35 S.W.3d 862, 872–73 (Mo.App.2001); *Maher v. Maher,* 951 S.W.2d 669, 676–77 (Mo.App. 1997). Mother also claims that increased time during spring break is an adequate substitute. This time, however, only amounts to one extra week every other year as Father was awarded spring break in odd-numbered years. Along these same lines, Mother seeks to *decrease* other parenting times awarded Father under the decree. The only advantageous aspect of Mother's plan was the increased time during the summer. The trial court obviously did not believe that these extra three weeks would adequately compensate for the lost time and contact Father and the children would endure the entire year. This was certainly not error.

■ Based on the foregoing facts of this case, the court's finding on the second factor is supported by substantial evidence and does not erroneously declare or apply the law.[4]

---

4. We do not ignore those cases Mother cites in support of her argument. In relocation cases, however, the particular facts of a case must guide the decision rather than rigid ap-

plications of certain rules. *Cullison,* 51 S.W.3d at 511[1]. For instance, Mother cites *Weaver v. Kelling,* 53 S.W.3d 610 (Mo.App. 2001), wherein the trial court permitted a

■ As to the third factor, the court found:

"The children are well adapted to their existing environment, have many friends, are well liked by their friends and classmates and have excellent interaction and interrelationships with those people who are important to them. They are also very bright children, making excellent grades in school, and appear to be very well adjusted on a social level as well. This factor weighs against relocation."

Mother acknowledges that this finding is supported by the evidence. She argues, however, that relationships with the "core family" are more significant than those with distant relatives or friends, citing *Dorman v. Dorman*, 91 S.W.3d 167 (Mo. App.2002).

In effect, Mother argues that the *Dorman* court found that a relationship with a stepfather and a half-sibling will automatically override the significance of any other relationship besides that of parent and child. We disagree with that interpretation. First, the father in *Dorman* was not very involved with his child, unlike Father here.[5] Consequently, in *Dorman*, the court recognized the *family unit* (the mother, stepfather, and half-sister) would be the most significant influence on the child.[6] The court never held that others

could not significantly affect the child more so than the "core family."[7] Second, the plain language of the statute shows otherwise, i.e., other individuals besides close family members can significantly affect children, to wit: "The interaction and interrelationship of the child with parents, siblings, *and any other person* who may significantly affect the child's best interests." § 452.375.2(3). Any argument to the contrary is rejected.

Moreover, in the argument section of her brief, Mother cites no testimony that showed what type of relationship the children had with Heaney. This further distinguishes the *Dorman* case because that type of evidence was presented to that court. On the other hand, the evidence here abundantly supports the findings by the trial court on the third factor as Mother acknowledges. The children's friends and classmates certainly have significantly affected them in a positive fashion. Additionally, there was testimony indicating the children have a good relationship with Father's best friend and his wife, i.e., they are like an aunt and uncle. Simply stated, the trial court was free to accept the testimony that all of these individuals positively and significantly affected the children, and it was in their best interests to maintain these relationships.

---

mother's move to Texas even though the relocation would negatively affect the Father's involvement in day-to-day activities and visits during the week. However, the original visitation schedule described therein was "hectic," and the relocation was found to actually stabilize the visitation, thus promoting the children's best interests. *Id.* at 615. That is not what the court found here; consequently, the *Weaver* case would be considered inapposite even if we were to apply rigid applications of rules in relocation cases.

5. For instance, the father there refused to travel twenty miles to exercise visitation, did

not call the child, and failed to write letters or send cards. *Dorman*, 91 S.W.3d at 168, 173.

6. The child in *Dorman* had never been away from his mother for more than a week, the mother was his primary caregiver, and the child interacted well with the stepfather. *Id.* at 173.

7. For instance, if the evidence showed that a stepfather ignored the child, never spoke to the child, and never interacted with the child, then the law certainly could not say that this relationship automatically overrode the significance of others.

■ As to the fifth and final factor, the court found that the children "are very well adjusted to their home, school and community." The evidence overwhelmingly supports this finding and Mother does not dispute this proposition. She argues, however, that the court improperly penalized her for her choice to remarry. Mother further states that she has an absolute right to remarry, whether or not that person lives out of state. She claims that the trial court "pinn[ed]" its finding on the fact that she married someone from a different state. We disagree.

The trial court's judgment implicitly found that the children's stability (provided by residency in Springfield) was of paramount importance. All parties acknowledged that the children were thriving in this environment. Uprooting them from their home, their Father, their friends, and their school is simply not in their best interests. *See Seaman v. Seaman*, 41 S.W.3d 889, 895[13] (Mo.App.2001) (finding stability and a good environment are primary considerations).

The importance of maintaining stability for these children can be gleaned from a number of facts. For instance, Father refused a job opportunity in Kansas City so the family would not have to move again and could maintain the life they built in Springfield; in fact, Mother actually told Father that if he wanted that job he could commute. Also, during the divorce while negotiating a settlement, Mother mentioned that Heaney was going to move to Springfield, whether or not he had a job,

i.e., relocation was not an issue. At a hearing involving the relocation, Mother testified that she and Heaney originally planned to live in Springfield. Heaney, however, could not find employment that paid him as much as he earned in Ohio; thus, they turned to "Plan B," namely, relocation. These facts implicitly show the admission by all involved parties that moving is not in the children's best interests.

Essentially, via the fifth factor, the trial court decided that forcing the children to move is unfair when the relocation is unnecessary. Mother chose to marry a man who she knew lived in another state. Because their plans failed to materialize, Mother seeks to burden the children by forcing them to move hundreds of miles from their home. Mother's mere desire to move versus the need to move is simply not sufficient.[8] *Newell v. Rammage*, 7 S.W.3d 517, 522 (Mo.App.1999).

Mother has wholly failed to show the trial court erred in applying the section 452.375 factors in making its best interests determination. Point denied.

### Point II: Sufficiency of the Evidence

In her second point on appeal, Mother claims the trial court erred in denying relocation for a variety of reasons. First, she claims the court ignored all of the visitation that Mother proposed except for the monthly visits. Second, she points to various reasons why relocation should be allowed.[9] Finally, she asserts that her request to relocate was made in good faith.

---

8. We deem this to be merely a wish versus a necessity because Heaney testified that if relocation were not permitted, he would look for a job in Springfield in a different field in order to make an adequate living. Likewise, Mother could continue in her current job. It appears that the only reason Mother seeks relocation is for the benefit of Heaney, i.e., so he can keep his current job.

9. Those reasons are (1) Heaney could not find a job in Springfield, (2) there is "potential" for a better education in Ohio, (3) the children are "capable" of adjusting to the move, (4) Cincinnati offers "lots of cultural and entertainment opportunities," and (5) staying in Springfield results in less stability.

As to Mother's first prong, that was decided adversely to her in our discussion of her first point. Via statute, the court was required to, and did, consider "the proposed parenting plan" submitted by Mother. § 452.375.2(1). Furthermore, as stated previously, the plan increased Father's parenting time by the following: (1) three extra weeks in the summer; (2) one extra spring break every other year; and (3) Memorial and Labor Days "to be included in the monthly visits;" however, Father received these days in odd-numbered years. The plan took from Father at least two weekends per month, all day-to-day contact, and Easter and Independence Day in alternating years.

There is no evidence the court did not consider everything Mother proposed. The court merely disbelieved Mother's assertions that the plan was workable, that the plan allowed for meaningful contact between Father and the children, and that the parties would follow through with its terms for the next decade. We do not firmly believe that the judgment is wrong, nor do we believe that the judgment is clearly against the logic of the circumstances. *Swisher*, 124 S.W.3d at 480[2]. This prong of Point II is denied.

Next, Mother claims that the reasons listed in note nine should compel relocation. Mother points to nothing, however, that suggests the court failed to consider these factors. The court merely determined that the benefits of moving to Ohio did not outweigh the harmful detriments. Under our standard of review, the fact that substantial evidence may exist to support an appellant's position does not, standing alone, entitle an appellant to relief on appeal.[10] *Herigon*, 121 S.W.3d at 567[7]. Prong (b) of Mother's second point is denied.

Finally, the issue of Mother's good faith has not been challenged. The court found that she was acting in good faith. This provides no reason for finding error in the court's best interests judgment. Point denied.

The judgment of the trial court which sustained Father's motion to prevent relocation is affirmed.

PARRISH, P.J., and BATES, C.J., Concur.

10. As to Mother's justifications, we note the following: (1) Heaney could find a job in Springfield, albeit not in his chosen profession; (2) the children receive an excellent education in Springfield; (3) children, in general, are "capable" of many things including adjusting to a new location, but the essential question is whether they should be forced to do so; and (4) Springfield offers "lots of cultural and entertainment opportunities" as does Cincinnati. Finally, we find that Mother's fifth reason, i.e., staying in Springfield results in *less* stability, is frivolous.