**Shelly R. Osia HENDRY, Appellant,**

v.

**Raymond C. OSIA, Respondent.**

**No. ED 94722.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 29, 2011.

Terry J. Flanagan, John Peel, Saint Louis, for Appellant.

Angelyn P. Zimmerman, Saint Charles, for Respondent.

## OPINION

GLENN A. NORTON, Presiding Judge.

Shelly R. Osia Hendry ("Mother") appeals the judgment denying her request to relocate and granting the motion to modify custody filed by Raymond C. Osia ("Father"). We affirm in part and reverse in part.

## I. BACKGROUND

In July 2006, the marriage of Mother and Father was dissolved. The parties were awarded joint legal and physical custody of their three minor children, C.O., K.O., and R.O. Primary residential custody was awarded to Mother, with visitation by Father. In 2007, Mother sent Father a letter regarding her desire to relocate from Washington County, Missouri to Imperial, Missouri. Father filed his opposition to Mother's relocation, and the trial court entered judgment finding, among other things, that the relocation was not in the best interests of the children. Our Court affirmed the trial court's judgment in *Osia v. Osia*, 260 S.W.3d 438 (Mo.App. E.D.2008). Thereafter, Mother sent Father another letter indicating her desire to relocate. Father filed a second opposition to the relocation, and a motion to modify. Father asked to be named as the residential custodian of the minor children. The trial court entered its findings of fact, conclusions of law, and judgment of modification, denying Mother's request to relocate and modifying custody of the minor children. The trial court designated Father as the "primary residential custodian,"

with visitation rights to Mother. Mother now appeals the trial court's judgment.

## II. DISCUSSION

### A. Points on Appeal

Mother asserts five points on appeal. In her first two points on appeal, Mother claims the trial court erred in granting Father's motion to modify custody. Her third, fourth, and fifth points on appeal challenge the trial court's decision denying her request to relocate. Because the trial court relied heavily upon Mother's desire to relocate in making its decision as to the custody modification, we consider Mother's points concerning relocation first.

### B. The Trial Court did not Err in Denying Mother's Request to Relocate

 Our review of the trial court's decision to prevent a proposed relocation is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Herigon v. Herigon*, 121 S.W.3d 562, 564 (Mo.App. W.D.2003). "We will affirm the trial court's ruling if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." 121 S.W.3d at 564–65. The fact that a ruling contrary to the trial court's could be supported by substantial evidence is of no consequence and does not require reversal. *Id.* at 567. Only when the judgment rendered is not supported by substantial evidence or is against the weight of the evidence must the judgment be reversed. *Id.*

Mother's third, fourth, and fifth points on appeal concern the trial court's decision to deny her request to relocate with the

minor children from Washington County to Imperial.[1] Section 452.377 RSMo 2000[2] sets forth the procedure for a custodial parent seeking to relocate. The statute requires the custodial parent to provide notice of the proposed relocation and allows the other parent to file a motion seeking to prevent such relocation. Pursuant to section 452.377.9, "[t]he party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best interests of the child."

In point four on appeal, Mother challenges the trial court's determination that the proposed relocation was not in the best interests of the children. In determining whether a proposed relocation is in the best interests of the children, the trial court looks to the factors set forth in section 452.375.2 RSMo Supp.2005.[3] These factors include:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and

---

1. Because we find below that Mother's fourth point on appeal must be denied, we need not address points three and five on appeal.

2. All further statutory references are to RSMo 2000, unless otherwise indicated.

3. All further references to section 452.375 are to RSMo Supp.2005.

meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved . . . ;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of the child as to the child's custodian.

Here, it appears as though the most relevant factors considered by the court and implicated by the evidence are the children's frequent, continuing, and meaningful contact with Father, as well as their adjustment to their home, schools, and community. Applying the relevant best interests factors as set forth in section 452.375.2 to the circumstances in this case, we find the trial court's determination that the proposed relocation would not be in the best interests of the children was supported by substantial evidence.

Testimony from both Mother and Father established that although Father's visitation was limited to alternating weekends, Wednesday evenings during the school year and overnight on Wednesdays during the summer, he was involved with the extracurricular activities of the children on a day-to-day basis. Father testified he sees the children approximately four to five days out of seven. He coaches the baseball team, and attends their sporting events. Father testified he would not be able to participate in these activities if Mother were allowed to relocate because he would not be able to drive the forty to fifty minutes each way to see the children during the week.

Moreover, there was significant evidence concerning the children's educational needs and the resources of the school they currently attended. Although Mother claims better services are provided at St. Joseph's, the school K.O. and R.O. would attend if she was allowed to relocate, there was evidence that similar services were being provided or could be provided at St. Joachim, the school the children attended. While St. Joseph's does have an individual on staff solely for special needs services, the accommodations for K.O.'s learning disability and ADD provided at both schools were essentially the same. Kathleen Boyer, K.O.'s teacher at St. Joachim, testified she accommodated his learning disability and ADD as recommended by the evaluators who diagnosed K.O. Although St. Joachim did not have a separate individual on staff solely for special needs services, Boyer testified the classroom teachers at St. Joachim filled that need. In addition, although the third, fourth, and fifth grade classes were combined in one classroom at St. Joachim because of a reduction in enrollment, the total number of students in the combined classroom was fifteen. Boyer testified even with the combined grades, she was able to provide individual assistance to K.O. Father also testified the children were in school with friends, and played sports and participated in extra curricular activities with those friends. If Mother were allowed to relocate, they would no longer be able to do so.

As noted above, there was testimony that relocation would diminish Father's contact with the children outside his regular visitation. In addition, there was evidence that the children are well adjusted to their home, school, and community. Therefore, there was substantial evidence to support the trial court's conclusion that relocation was not in the best interests of the children. Point four on appeal is denied.

## C. The Trial Court Erred in Granting Father's Motion to Modify

▮ Mother's first two points on appeal concern the trial court's decision to

grant Father's motion to modify custody. We will affirm the trial court's ruling with respect to a modification of custody if it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *In re D.M.S.*, 96 S.W.3d 167, 171 (Mo.App. S.D.2003). Pursuant to section 452.410.1, the trial court shall not modify a custody decree unless it finds that a change in the circumstances of the child or his custodian has occurred and that the modification is in the best interests of the child.

In her first point on appeal, Mother claims the trial court erred in granting Father's motion to modify because there was no change of circumstances to justify such modification. The trial court considered the factors enumerated in section 452.375.2 to evaluate whether modification was in the best interests of the children and did not specifically discuss whether any substantial and continuing change of circumstances had occurred to warrant modification. Instead, the trial court concluded that in light of the best interests factors, and "the finding that [Mother] intends to relocate despite the Court's ruling," there was a substantial and continuing change of circumstances. While we question whether an intention to move would constitute a change of circumstances to warrant a modification of custody, we need not consider that issue. Instead, Mother's second point on appeal is dispositive. In her second point, Mother claims the trial court erred in granting Father's motion to modify custody because there was no substantial evidence that such a modification was in the minor children's best interests. We agree.

As previously noted, pursuant to section 452.410.1, the trial court must find a change of circumstances *and* that the modification is in the best interests of the child

to warrant modification. In its consideration of the best interests factors warranting modification, again, the trial court looks to the factors set forth in section 452.375.2. Here, the trial court relied heavily upon the assumption that Mother would relocate in its determination of whether modification was in the best interests of the children. In assessing whether modification was in the best interests of the children, the trial court found that Father would not be able to have frequent, continuing, and meaningful contact with the children if Mother were allowed to relocate. However, the trial court denied Mother's request to relocate. As a result of the trial court's denial of Mother's request to relocate, the children's best interests would continue to be served with the original custody arrangement. They would continue to attend St. Joachim, where as discussed above, they had services to address K.O.'s special educational needs, and where they had made friends and become involved in sports and extra curricular activities. Moreover, they would remain close to Father and Father would be able to continue his participation in the children's lives. The fact that Mother may spend some of her custodial time with the children in Imperial would not change these facts since she was not allowed to relocate. As a result, the trial court's conclusion that a modification of custody was in the best interests of the children, particularly when Mother's request to relocate was denied, was not supported by substantial evidence. Point two is granted and the modification of custody is reversed.

### III. CONCLUSION

The portion of the judgment modifying custody is reversed and the trial court's judgment is affirmed in all other respects.

KATHIANNE KNAUP CRANE, J., and GEORGE W. DRAPER III, J., concur.