**Sidney Danielle ALLEN By Her Next Friend Cap Duke ALLEN, Individually, Respondent,**

v.

**Deena GATEWOOD, Appellant.**

**No. WD 74799.**

Missouri Court of Appeals, Western District.

Jan. 22, 2013.

Christy L. Fisher, Plattsburg, MO, for appellant.

Michele C. Puckett–Burkhead, Cameron, MO, for respondent.

Before Division Two: LISA WHITE HARDWICK, Presiding Judge, JAMES M. SMART, JR. and KAREN KING MITCHELL, Judges.

LISA WHITE HARDWICK, Judge.

Deena Gatewood ("Mother") appeals from the circuit court's judgment sustaining Cap Duke Allen's ("Father") motion to prevent her from relocating with their daughter ("Child") and finding Mother in contempt. Mother contends the court erred in granting relief because Father's motion was untimely and there was substantial evidence that relocation was in the best interests of Child. Mother also asserts the court erred in denying her motion for continuance of the trial setting. For reasons explained herein, we affirm.

FACTUAL & PROCEDURAL HISTORY

On July 17, 2009, the Circuit Court of DeKalb County entered a paternity judgment declaring Father to be the natural father of Child and granting Mother and Father joint legal and joint physical custody of Child. Pursuant to the paternity judgment, Child was to reside with Mother, subject to a custodial schedule for Father. At the time of the judgment, all of the parties lived in Cameron, Missouri. The judgment ordered the parties to follow the statutory notification requirements, Section 452.377,[1] pertaining to relocation. Under the judgment, Mother and Father were also required to consult with each other in making decisions regarding Child's education.

On March 25, 2011, Mother sent Father a letter by certified mail notifying him that

---

1. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2011, unless otherwise noted.

she intended to "relocate with [Child] to 13480 NW Burlington Drive, Breckenridge, Missouri 64625 on June 1, 2011." The notice stated that Mother wished to relocate because her then fiancée David Sanson, now her husband, had recently inherited a "4000 square foot home with 180 acres" in Breckenridge. The letter went on to state: "Currently we rent a home in Cameron and we believe it's unreasonable to continue residing in a rental that is one-half the size of what he has inherited." Cameron is located approximately 27 miles from Breckenridge.

Upon receipt of Mother's letter on March 26, 2011, Father attempted to visit the property where Mother intended to relocate. The address Mother provided in the relocation notice was an open field with no dwelling. Father contacted Mother "several times" asking for the correct address, and each time Mother responded by instructing Father to refer to the relocation notice.

Eventually, on April 27, 2011, Father was able to locate the actual residence by driving around Breckenridge—with the aid of a plat map—until he spotted Sanson's car. The residence was actually located at 13100 NE Burlington Drive. Additionally, instead of being a "4000 square foot home with 180 acres," the residence was a modular home located on "considerably less than 180 acres." Father later discovered that Sanson's mother also would be living in the modular home. Mother did not actually confirm "13100 NE Burlington Drive" as the correct address until June 2011.

On April 27, 2011, the same day Father located the correct address and thirty-two days after he received Mother's relocation notice, Father filed a motion to prevent relocation. In response, Mother filed a motion to dismiss Father's motion to prevent relocation, asserting that Father waived any objection to relocation by failing to file his objection within thirty days of receiving Mother's notice, as required by Section 452.377.7. Father subsequently filed a motion for contempt, arguing that Mother's relocation notice failed to comply with the requirements of Section 452.377 and, therefore, Mother violated the 2009 paternity judgment.

On June 1, 2011, Mother relocated with Child to Breckenridge and, without first consulting Father, enrolled Child in the Breckenridge School District. At that time, Child was five years old and ready to start kindergarten in August. Child had attended preschool and summer school at Park View Elementary in Cameron and would have continued with kindergarten at that school if the relocation had not occurred.

On August 9, 2011, Father filed a notice of his request for trial setting, which was heard on August 15, 2011. The partner of Mother's attorney appeared and represented Mother at the August 15th hearing, during which the circuit court scheduled the trial for August 29, 2011.

On August 18, 2011, Mother filed a motion to continue the trial date because her counsel had another trial scheduled for the same day. Father subsequently filed an objection to the continuance, arguing that it was necessary to designate Child's school district as soon as possible. During a phone conference on August 26, 2011, the circuit court denied Mother's motion for continuance, and the trial was held as scheduled on August 29, 2011.

Following the trial, the circuit court entered a judgment sustaining Father's motion to prevent relocation. The court also found Mother in contempt of court for "intentionally and willfully violat[ing]" the 2009 paternity judgment by "failing to consult with [Father] regarding education de-

cisions" and failing to comply with the statutory notification requirements pertaining to relocation. The judgment stated that Mother could "purge her contempt by returning the child to a residence situated in the Cameron School District by September 20, 2011; and by immediately enrolling the child in the Cameron School District." Mother appeals.

### STANDARD OF REVIEW

 Our review of a trial court's judgment on a motion for relocation of a child is for whether the judgment " 'is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law.' " *Cortez v. Cortez,* 317 S.W.3d 630, 633–34 (Mo.App.2010) (quoting *Herigon v. Herigon,* 121 S.W.3d 562, 564–65 (Mo.App. 2003)). We defer to the circuit court's credibility determinations and view the evidence in the light most favorable to the court's decision. *Haden v. Riou,* 37 S.W.3d 854, 860 (Mo.App.2001).

### ANALYSIS

#### Compliance with Relocation Statute

In Point I, Mother contends the circuit court erred in denying the relocation to Breckenridge because Father did not file his opposition motion within thirty days of receiving Mother's relocation notice as required by Section 452.377.7. Based on Father's untimeliness, Mother asserts she had an absolute right to move Child.

"Section 452.377 governs the 'relocation of children' in this state." *Herigon,* 121 S.W.3d at 565. "Relocation" is defined as "a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence." § 452.377.1. Under Section 452.377.2, a parent who intends to relocate must give written notice of the proposed relocation to the other parent. Section 452.377.2 requires the relocation notice to be:

> [G]iven in writing by certified mail, return receipt requested . . . at least sixty days in advance of the proposed relocation. . . . [And] shall include the following information:
>
> (1) The intended new residence, including the specific address and mailing address, if known, and if not known, the city;
>
> (2) The home telephone number of the new residence, if known;
>
> (3) The date of the intended move or proposed relocation;
>
> (4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and
>
> (5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

 Once the notification is received, the non-relocating parent has thirty days to file a motion to prevent relocation. § 452.377.7. "The non-relocating parent waives any objection to the relocation by failing to object in a timely manner, giving the relocating parent an absolute right to relocate with the child, without the permission of the non-relocating parent or the court." *Dent v. Dent,* 248 S.W.3d 646, 648 (Mo.App.2008). In such a case, the child may be relocated sixty days after the non-relocating parent received the relocation notice. *Id.* at 647–48.

In response to Mother's claim on appeal, Father argues that Mother is not entitled to relief because she failed to provide adequate notice of the relocation pursuant Section 452.377.2. Specifically, Mother's notice did not provide the correct address and an accurate description of the residence where Child would be living. Mother cannot claim an absolute right to relo-

cate Child under Section 452.377.7 without first demonstrating her strict compliance with the notice requirements of Section 452.377.2. *Abraham v. Abraham*, 352 S.W.3d 617, 621 (Mo.App.2011).

In *Abraham*, this Court held that "the date for any legal obligation to begin for the nonrelocating party [is] the date of the receipt of the certified letter which *strictly complies* with the provisions of the statute." *Id.* at 620 (emphasis added).[2] In that case, mother sent father a relocation notice that did not provide a specific address, but instead listed "Orlando, Florida" as the intended new residence. *Id.* at 618. Father filed a motion to prevent relocation thirty-eight days after receiving the notice. *Id.* Mother then filed a motion to dismiss, arguing that she had an absolute right to relocate because father filed his motion eight days late. *Id.* The trial court denied mother's motion to dismiss on the basis that her notice to father was inadequate. *Id.*

On appeal, mother argued "that her statement that she would move to 'Orlando, Florida' was sufficient." *Id.* at 621. The court disagreed, affirming the circuit court's holding that mother's notice was inadequate because it did not strictly comply with Section 452.377. The court explained:

> Mother ignores the language "if known," as set forth in section 452.377.2(1). Mother indicated in her letter that she did not have a specific mailing address in Orlando at the time of the letter; however, there was evidence from which the trial court could have found that Mother indeed knew where in Orlando, Florida, she was moving and that she failed to inform Father of that location.

*Id.* The court further explained that "the statutory purpose of requiring an actual address and a mailing address is for the benefit of the nonrelocating party; a parent should be informed where his/her child will be living." *Id.* The court noted that "[o]nly in rare circumstances would it suffice to simply state the city and state." *Id.*

■ In the instant case, Mother attempts to distinguish *Abraham* by asserting that she "did not know" that the address she provided in the notice was not the correct address. However, similar to *Abraham*, "there was evidence from which the trial court could have found that Mother indeed knew" the correct address. *Id.* Specifically, Father offered an enrollment card Mother completed on April 20, 2011, in which she listed "13100 NE Burlington

---

2. In *Abraham*, the relocating parent relied on *Baxley v. Jarred*, 91 S.W.3d 192 (Mo.App. 2002) to argue that "strict compliance" with the statutory elements of a relocation letter is not required. *Abraham*, 352 S.W.3d at 619. In *Baxley*, the court waived the requirement for notice of relocation by certified mail. *Baxley*, 91 S.W.3d at 205. "To compound the matter, after refusing to require the relocating parent to strictly comply with the statute, the *Baxley* court then [inexplicably] required strict compliance by the non-relocating parent in the filing of an objection within thirty days of receiving notice." *Abraham*, 352 S.W.3d at 620 (alteration in original). Without expressly overruling *Baxley*, the *Abraham* court concluded that the *Baxley* de-

cision was "simply not warranted by the plain language of [Section 452.377], nor by the intent of the statute." *Id.* The *Abraham* court explained:

> We believe the legislature intended that the date for any legal obligation to begin for the nonrelocating party was the date of the receipt of the certified letter which strictly complies with the provisions of the statute; it was intended as a bright line for parents, practitioners and the court. To hold otherwise causes confusion in the courts and the practicing bar as to whether a motion to prevent relocation needs to be filed.
>
> *Id.*

Dr." as her address.[3] Relying on this evidence, Father argues that Mother's "relocation notice was a sham and a fraud clearly intended to conceal the fact that she was relocating to a modular home to live with her fiancée's mother on a small tract of land." The trial court heard testimony on both of these positions and apparently found Father's to be more credible. We defer to the circuit court's resolution of this conflicting evidence, as it was in a better position to evaluate credibility.

Viewing the evidence in a light most favorable to the judgment, we find that Mother knew the correct address of her intended new residence but did not provide that address in the relocation notice she sent Father. Consequently, "Father was not advised where his daughter would be living." *Id.* at 622. Father had a right to be informed of the correct location where Child would be living. This is especially true given that Mother's notice inaccurately and misleadingly described the new residence as a "4000 square foot home." Accordingly, the trial court did not err in finding that Mother's relocation notice did not comply with Section 452.377 and, therefore, Father's failure to object to the relocation within thirty days did not give Mother an absolute right to relocate. Point I is denied.

### Sufficiency of the Evidence

In Point II, Mother argues the circuit court erred in preventing her from relocating with Child because the court's ruling is unsupported by substantial evidence, is against the weight of the evidence, and erroneously applies the law to the facts of this case. Specifically, Mother contends that the evidence supports a finding that the relocation was in Child's best interests.

When a parent does not have an absolute right to relocate, the parent may still relocate with the child by order of the circuit court. *Baxley,* 91 S.W.3d at 199. In such cases, the party seeking to relocate is required to prove "that the proposed relocation is made in good faith and is in the best interests of the child." § 452.377.9. "Use of the conjunctive 'and' makes it clear that the parent requesting relocation must meet both burdens." *McDonald v. Burch,* 91 S.W.3d 660, 663 (Mo. App.2002). Here, the circuit court did not make a finding as to whether Mother's relocation was made in good faith. However, because Mother had the burden of proving "both that the proposed relocation [was] made in good faith and [was] in the [child]'s best interests ... if we find that the court's best interests finding was not against the weight of the evidence, we must affirm its order preventing [Mother] from relocating." *Herigon,* 121 S.W.3d at 568.

"In determining whether a proposed relocation is in the best interests of the child[ ], the trial court looks to the factors set forth in [S]ection 452.375.2." *Hendry v. Osia,* 337 S.W.3d 759, 761 (Mo.App. 2011). Those factors are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

---

**3.** Even if Mother did not know that "13100 NE Burlington Drive" was the correct address until April 20, 2011, she had a continuing obligation under Section 452.377.3 to correct the information provided in her relocation notice.

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved . . . .

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2.

▆▆▆ Mother challenges the circuit court's express finding that she "failed to prove that the proposed relocation [was] in the best interest of the minor child." Mother asserts she provided "adequate proof that the move . . . was in the child's best interests," but her argument ignores the standard of review, which requires us to defer to the circuit court's decision, even if the evidence could have supported an alternative judgment. *Hendry*, 337 S.W.3d at 761. "Only when the judgment rendered is not supported by substantial evidence or is against the weight of the evidence must the judgment be reversed." *Id.* After considering the relevant best interests factors in this case, we find the circuit court's decision that relocation was not in Child's best interests is supported by substantial evidence.

The first factor addresses the parents' wishes with regard to the custodial issue. Although the court found this factor weighed against relocation based on Father's objections to the move, we find it is neutral because the parents had opposing viewpoints on the relocation.

As to the second factor, there was evidence in the record to support the court's finding that "[r]elocation will interfere with frequent, continuing, and meaningful relationship between the child and [Father]." Under the parenting plan included in the 2009 paternity judgment, Father had two midweek visits from 5:00 p.m. to 8:00 p.m. The parties alternated custodial time on the weekends and holidays. Father also had extended summer visitation. When asked on cross-examination how the relocation would change his parenting time, Father testified:

I have three hours during my midweek visits to see my daughter; and by the time I drive [to Breckenridge], then have road time with her on the way back [to Cameron], and by the time we sit down and have supper and do her lessons, I don't have much—it's time to take her back.

Mother argues that the relocation would not be detrimental to Child's time with Father because he "had not exercised much of his midweek visitation since the [paternity] judgment." Father testified to the contrary, stating that he did exercise his midweek visits. As noted earlier, the circuit court was free to believe Father's testimony over Mother's. *Voinescu v. Kinkade*, 270 S.W.3d 482, 487 (Mo.App. 2008). This evidence that the relocation would diminish Child's meaningful contact with Father weighs in favor of a finding that relocating would not be in Child's best interest and, thus, supports the circuit court's judgment.

Although the court did not make any finding on the third factor,[4] Mother argues

---

**4.** The circuit court did not make specific written findings for each of the eight factors; however, it was not required to do so. *Lalumondiere v. Lalumondiere*, 293 S.W.3d 110, 113 (Mo.App.2009). Here, the court focused its findings on factors (1), (2), (4), and (5), stating that those factors were "[a]mong the factors weighing against relocation."

that relocating to Breckenridge would be in Child's best interests because it would allow Child to continue to live with her step-father and half-brother. Yet, there is no evidence in the record to suggest that *relocation to Breckenridge* is the only means which the half-siblings can live with Mother and Sanson.[5] See *Mantonya v. Mantonya*, 311 S.W.3d 392, 401 (Mo.App. 2010). In addition, Mother did not present any evidence to establish what type of relationship Child has with her half-brother and step-father. See *Classick v. Classick*, 155 S.W.3d 842, 847 (Mo.App.2005). On the other hand, Father presented ample evidence of his involvement in Child's life. Therefore, "[w]hile [Child]'s continued relationship with [her] extended family should be encouraged, [her] relationship and interaction with those persons who may *significantly* affect [her] best interests, namely, [her father]," weighs against relocation. *Dorman v. Dorman*, 91 S.W.3d 167, 173 (Mo.App.2002).

As to the fourth factor, the circuit court found:

> [Mother]'s failure to even acknowledge [Father]'s joint custodial status when enrolling the child in the Breckenridge School District suggests that [Mother] is not likely to foster such relationship (between child and [Father]) if allowed leave to relocate the residence of the child.

Mother claims there was no evidence to support this finding. We disagree, as there was evidence that Mother enrolled Child in the Breckenridge School District on April 20, 2011, without first consulting Father. Father testified that Mother did not inform him that she enrolled child in the Breckenridge School District until late July 2011. Moreover, on Child's enrollment card, Mother designated "Contact Father" as the fourth action to take in case of emergency, behind contacting Mother, contacting Sanson, and taking Child to the hospital. Father also introduced an enrollment information form that Mother completed for the Breckenridge School District. To the question, "Who has legal right to make educational decisions regarding student," Mother listed only herself. Additionally, Father, over Mother's objection, was permitted to introduce evidence that there was a harassment case pending against Mother for text messages Mother sent Father in response to his inquiries into matters relating to Child. This evidence constitutes substantial and competent evidence that supports the circuit court's finding on the fourth factor.[6]

Concerning the fifth factor, the circuit court concluded that relocation would adversely affect Child's adjustment to her home, school, and community. Specifically, the court found that Child "thrived while living in Cameron and attending its schools; whereas it is, at best, unknown whether the child will adjust well to the change in school and community." Mother testified that Child had adjusted to the Breckenridge School District; at the time of trial, however, Child had only attended school in Breckenridge for less than two weeks. Furthermore, while the circuit court's finding that Child "thrived" in

<hr>

**5.** In fact, Sanson worked in Cameron and commuted from Breckenridge every day. Furthermore, Child's half-brother had just recently begun living with Mother. Prior to living with Mother, the half-brother lived and attended school in St. Joseph and, thus, did not have any ties in Breckenridge and had not lived with Child.

**6.** Mother also argues that the circuit court erred in finding Mother in contempt for intentionally and willfully failing to consult with Father regarding educational decisions. This argument fails for the same reasons we find that substantial evidence exists to support the circuit court's finding as to the fourth factor on the best interests analysis.

Cameron may be overstated, there is sufficient evidence in the record to establish that Child was well adjusted to her school and community in Cameron. Father testified that Child had friends her age in Cameron and had been attending the same school in Cameron for a year and a half before Mother relocated. Mother even admitted that Child had a familiarity with her surroundings at the Cameron school, as well as with the Cameron teachers. Based on this evidence, we cannot conclude that the circuit court's finding that Section 452.375.2(5) weighed against relocation was "manifestly erroneous." *Hueckel v. Wondel*, 270 S.W.3d 450, 453 (Mo.App.2008).

Factors six and eight do not apply here because there was no evidence of the parties' mental and physical health, nor was there evidence regarding Child's preference. Finally, factor seven weighs against Mother because she wishes to relocate Child's principal residence. However, we note that "[t]he significance of this factor in determining whether relocation is in a child's best interests is questionable, as this factor will always weigh against the party seeking to relocate." *Dorman*, 91 S.W.3d at 174.

As one final matter under this Point:

We are mindful that the impact of affirming the trial court's judgment is to prohibit an intrastate, [short distance] relocation, while other decisions of this court have affirmed judgments permitting interstate relocations distancing parents with custodial rights by hundreds of miles. However, such seemingly inconsistent outcomes are wholly consistent with the fact that each request for relocation must be determined based on the unique and particular facts of the case presented to the trial court. The deference we afford trial court judgments in relocation matters reflects the trial court's superior position to evaluate the facts in each case, and to assess, based on those unique facts, the best interests of the children.

*Mantonya*, 311 S.W.3d at 402 (citation omitted).

For all of the foregoing reasons, we conclude that the circuit court's finding that relocation was not in Child's best interests is supported by substantial evidence and not against the weight of the evidence. Point II is denied.

### Motion for Continuance

In her final point, Mother contends the circuit court erred in denying her motion for continuance of the August 29, 2011 trial date, in that "[Father] did not provide in a timely manner the required notice of hearing for the trial setting which resulted in [Mother]'s attorney not being present for said trial setting which eventually resulted in a trial date that conflicted with [Mother]'s attorney's schedule and effected [her] ability to adequately prepare for hearing in this cause."

Mother fails to cite any legal authority regarding the untimeliness of Father's notice of hearing for trial setting. We can only presume that her argument is based on Rule 44.01(d), which states, in pertinent part: "A written motion . . . and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing." In the instant case, notice of the August 15, 2011 hearing was served on counsel on August 9, 2011. Under the time computation guidelines set out in Rule 44.01(a), Mother was given four days notice of the August 15th hearing.

Although Mother was given less than five days notice for the trial setting, her argument on appeal is unpersuasive. First, the record does not indicate that Mother objected to the untimely notice and nor does Mother claim that she objected. Moreover, the purpose of Rule 44.01(d) is to provide the notified party

with an opportunity to be heard. *Sitelines L.L.C. v. Pentstar Corp.*, 213 S.W.3d 703, 707 (Mo.App.2007). Here, Mother was represented at the August 15th trial setting hearing by the partner of her counsel of record. In fact, Mother maintains that her attorney's partner even objected to the August 29th trial date at the hearing. Accordingly, Mother waived Father's failure to give five days notice of the pretrial hearing. See *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330, 338 (Mo.App.1983).

Notwithstanding this waiver, Mother's claim also fails on the merits. "When notice of a proceeding has been given for a time less than the five days required by Rule 44.01, we consider if the notice given was reasonable under the facts and circumstances." *Sitelines*, 213 S.W.3d at 706–07. Rule 44.01(d) contemplates hearings on motions that may adversely affect a party's rights. *Id.* Here, the August 15th hearing was not a hearing on Father's substantive motions. The purpose of the August 15th hearing was simply to set a date for Father's motions to be heard. Under these circumstances, we cannot find that four days notice was unreasonable.

Mother further claims that the circuit court erred in denying her motion for continuance because such denial "complete[ly] disregard[ed]" the court's earlier representations to her attorney's partner. Mother maintains that her attorney's partner objected to the August 29th trial date and that, in overruling the objection, the court instructed counsel to have Mother's attorney "notify the court if there was truly a conflict and the court would revisit the issue." Therefore, Mother argues that her counsel "reasonably believed the matter would be rescheduled" and, thus, did not begin preparing for trial until her motion for continuance was denied on August 26, 2011—three days before trial.

Father disputes that the partner of Mother's counsel raised any objection to the trial setting at the hearing on August 15. Notably, Mother did not provide a transcript of the August 15th hearing to this Court and her appellate brief does not contain a single reference to the legal file on this issue. "A point that claims error but ... fails to refer to testimony or other evidence that supports the appellant's contention preserves nothing for appellate review and constitutes grounds for dismissing the appeal." *In re Marriage of House*, 292 S.W.3d 478, 482 (Mo.App.2009). Consequently, because Mother failed to make a record of the purported facts supporting her argument, she has not preserved this argument for review. *Robertson v. Robertson*, 228 S.W.3d 624, 626 (Mo.App.2007).

Nevertheless, based on the record provided, the circuit court did not err in denying Mother's motion for continuance. We review the circuit court's denial of a motion for continuance for an abuse of discretion. *In re R.M.K.*, 330 S.W.3d 602, 604 (Mo.App.2011). "We will reverse the denial only when the trial court enters an order that is clearly against the logic of the circumstances and is arbitrary and capricious." *Id.* Given the fact that the school year had already begun and, thus, there was a need to designate Child's school district as soon as possible, the circuit court's denial of Mother's motion for continuance was not an abuse of discretion. Point III is denied.

### CONCLUSION

The judgment of the circuit court is affirmed.

ALL CONCUR.