

# In the Missouri Court of Appeals
# Eastern District

### SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNY (MARTIN) MEHLER, | ) | No. ED100103 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of Ste. Genevieve County |
| | ) | |
| KURT MARTIN, | ) | Honorable Robin E. Fulton |
| | ) | |
| | ) | |
| Appellant. | ) | Filed: June 10, 2014 |

Kurt P. Martin ("Father") appeals the judgment of the trial court modifying custody and child support for his minor children with Penny M. Martin Mehler ("Mother"). We affirm in part and reverse and remand in part.

## I. BACKGROUND

Mother and Father's marriage was dissolved in February 2005. In the original dissolution judgment, the parties were granted joint legal custody of their three minor children, E.M., A.M., and C.M., with sole physical custody to Mother and visitation to Father. Father was ordered to pay $300 per month in child support to Mother. In 2006, Mother remarried, and subsequently moved from Ste. Genevieve to Eureka. Mother testified at the modification hearing that she and Father had an oral agreement allowing her to relocate with the minor children to Eureka. According to Mother, Father changed his mind about the agreement after she had entered into a lease on a house in Eureka. Father filed a motion to modify custody as a result of Mother's

move, and Mother filed a cross-motion to modify. The trial court ultimately entered an extensive judgment modifying custody and child support. The court granted sole legal custody to Mother, modified Father's visitation, and increased Father's monthly child support to $1,000. The court also ordered Father to pay $12,500 to Mother for her attorney's fees. Finally, the court ordered Father to complete an anger management therapy course. Father now appeals.[1]

## II.     DISCUSSION

Father presents nine points on appeal. Several of Father's points relate to Mother's relocation to Eureka and several relate to the modification of custody and child support as a result of the move. In the interest of clarity, we consider the multiple related points together below.

### A.     Standard of Review

We review this court-tried case under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Hightower v. Myers*, 304 S.W.3d 727, 731-31 (Mo. banc 2010). We will affirm the court's judgment of modification unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the court erroneously declares or applies the law. *Id*. We view the evidence and all inferences therefrom in the light most favorable to the judgment. *Id*. at 732. In addition, we give the trial court even greater deference in custody matters than in other matters. *Id*. We will not reverse a trial court's decision regarding custody unless it is manifestly erroneous and the best interests of the children require a different result. *Abernathy v. Meier*, 45 S.W.3d 917, 922 (Mo. App. E.D. 2001).

---

[1] Mother filed a motion to dismiss Father's appeal for failure to comply with Rule 84.04(c) and Rule 81.12(a). Mother's motion is denied.

**B.     Modification**

The basis for the present appeal is the trial court's judgment of modification. Father makes several claims of error concerning the trial court's findings regarding Mother's "relocation." To the extent Mother's move to Eureka constituted a factor in the trial court's decision to modify visitation and legal custody, we consider these points below.

**1.     Notice of Relocation**

In several of his points on appeal, Father's claims of error center upon Mother's failure to provide him with written notice of her relocation as required by Section 452.377 RSMo (2000).[2] Specifically, in point eight on appeal Father contends the trial court erred in holding verbal notice of relocation was sufficient. Father's arguments on appeal in points one, five, and six, also center on Mother's failure to provide him with written notice.

Pursuant to Section 452.377.2, notice of the proposed relocation of a minor child shall be given "in writing by certified mail, return receipt requested, to any party with custody or visitation rights." Pursuant to the statute, a parent desiring to relocate a minor child is not required to file any motion seeking permission to do so. *Herigon v. Herigon*, 121 S.W.3d 562, 566 (Mo. App. W.D. 2003). Instead, Section 452.377 provides for a procedure triggered by the notice of a proposed relocation. *Id.* Once proper notice is given, unless the non-relocating parent objects to the relocation, the residence of the child may be moved sixty days after the notice without court intervention. Section 452.377.7. The failure to provide proper notice can be considered in a modification of a prior custody decree pursuant to Section 452.410. Section 452.377.12.

Here, it is undisputed that Mother did not provide Father with written notice by certified mail. Mother testified they had an oral agreement regarding her move to Eureka, which Father

---

[2] All further statutory references are to RSMo (2000), unless otherwise indicated.

denied. Father filed his motion to modify as a result of Mother's relocation to Eureka, and the trial court considered the evidence of Mother's lack of statutory notice in its modification of custody, as allowed for in Section 452.377.12. As the trial court properly concluded, Mother's failure to provide written notice, as set forth in Section 452.377, is not determinative in the present case. Mother's failure to provide written notice as required by the statute is relevant only to Mother's claim of an absolute right to relocate under Section 452.377. *See Allen ex rel. Allen v. Gatewood*, 390 S.W.3d 245, 249-50 (Mo. App. W.D. 2013) (mother could not claim absolute right to relocate absent strict compliance with notice requirements of Section 452.377.2). Mother is not claiming an absolute right to relocate in this case. If a parent does not have the absolute right to relocate, based upon Section 452.377, the parent may still relocate by order of the trial court. *Id*. In such a case, the party seeking to relocate must show the relocation is made in good faith and in the best interest of the child. *Id*. (citing Section 452.377.9). Here, Mother did not have the absolute right to relocate due to her lack of notice; however, absent the statutory notice, Mother could seek to have the trial court approve the relocation upon consideration of her good faith request and the best interests of the minor children. In addition, Father was not denied the opportunity to object to Mother's move to Eureka. To the contrary, as discussed in depth below, there was considerable evidence presented concerning Mother's desire to relocate the children, as well as whether such a move served the best interests of the children. Point eight on appeal is denied.

### 2. Good Faith

In point one on appeal, Father contends the trial court erred in finding Mother's request to relocate was made in good faith. He argues Mother's true motive to move the minor children was to deprive him of contact with the children. This argument is wholly without merit.

4

The trial court found Mother sought relocation to be closer to her new husband's job following the foreclosure on their home in Ste. Genevieve. The court also noted other factors, including an improvement to the minor children's quality of life, supported the conclusion that Mother's request to relocate was made in good faith. There was ample evidence in the record to support the court's findings in this regard. No evidence was presented to support Father's contention that Mother was attempting to relocate to deprive him of meaningful contact with the minor children. Point one on appeal is denied.

### 3.     Best Interests

In point four on appeal, Father claims the trial court erred in finding relocation was in the best interests of two of the three minor children.[3] Father argues the factors considered by the trial court favored Father, and the trial court considered Mother's best interests rather than the best interests of the two minor children. We disagree.

Section 452.375.2 RSMo (Cum. Supp. 2011)[4] requires the trial court to determine custody in accordance with the best interests of the child. The statute sets forth the relevant factors to be considered in making such a determination. Section 452.375.2. These are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing, and meaningful contact with the other parent;

---

[3] The oldest of the three minor children resided with Father following Mother's move to Eureka. Mother did not contest this at trial and does not appeal the trial court's judgment to that effect.

[4] All further references to Section 452.375 are to RSMo (Cum. Supp. 2011).

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence as defined in Section 455.010 has occurred, and if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian. The fact that a parent sends his or her child or children to a home school, as defined in section 167.031, shall not be the sole factor that a court considers in determining custody of such child or children.

The trial court considered each of these factors individually at length in its judgment, and made extensive findings regarding the evidence supporting each factor. The court found that factor one and factor three, in part, did not favor either party. Factors two, four, and six favored Mother, and the remaining factors favored Father. The trial court noted additional concerns regarding Father's inability to communicate with Mother civilly as well as his anger management issues contributed to the court's decision to modify the parenting plan in the present case. The trial court also relied on the guardian ad litem's recommendation that it would be in the best interests of the two younger minor children to reside with Mother during the school year, and these considerations weighed in favor of modification.

With respect to the factors weighing in favor of Mother, the trial court considered the needs of the children for frequent, continuing, and meaningful contact with both parents, and the ability of each parent to actively perform their functions as mother and father for the children's needs. The trial court noted it was appropriate for both parents to have frequent, continuing,

6

meaningful relationships with the minor children; however, the evidence regarding each parent's ability and willingness to actively perform his or her function as a parent favored Mother. The evidence showed Mother stayed at home and supervised the children, and attended the children's activities more frequently than Father. Father himself testified he was not a good disciplinarian, and there was evidence that the minor children were not as well supervised when staying with Father. There was also evidence that Father's sporadic work schedule resulted in his absence from the home, as well as from the minor children's extracurricular activities and school functions. Although Father testified he was participating in those activities frequently, the trial court noted this was disputed by Mother. The court found Mother's testimony and evidence more credible, and we defer to the trial court's credibility determination because of its superior position to observe the sincerity and character of witnesses, as well as other intangibles not evident from the record. *Thomas v. Moore*, 410 S.W.3d 748, 754-55 (Mo. App. W.D. 2013). Based upon the evidence discussed above, the trial court's assessment of this factor as weighing in favor of Mother was supported by the evidence.

The second factor favoring Mother was which parent would be more likely to allow frequent, continuing, and meaningful contact of the child with the other parent. There was no evidence that Mother ever interfered with Father's contact with the minor children. In fact, Mother testified she adjusted her schedule to accommodate Father's visitation when necessary, and the two minor children testified they did not believe Mother would prevent them from seeing Father. Although Mother's move to Eureka did change the nature of Father's visitation and contact with the minor children, Mother testified she was "willing to do what it takes to meet him," because she believes it is important that the children have time with Father.

7

The evidence further showed Father attempted to keep the minor children from Mother by refusing to return the children following his visitation on more than one occasion, and Mother had to involve the police. In addition, as discussed in further detail below, Father made unilateral decisions to enroll the children in school, as well as in extracurricular activities without Mother's input or knowledge. The evidence showed Father discussed the custody dispute with the minor children, calling Mother derogatory names in front of the children. There was also evidence Father told the children he would buy a swimming pool to encourage them to live with him in Ste. Genevieve. Based upon the foregoing, the trial court's conclusion that the factor weighed in favor of Mother was supported by the evidence.

Finally, the court found factor number six in favor of Mother. This factor contemplates the mental and physical health of all individuals involved, including any history of abuse. There was significant evidence presented concerning Mother's struggles with post-partum depression, migraine headaches, and continued depression and anxiety. Mother was hospitalized for in-patient psychiatric treatment, and she visited the emergency room on multiple occasions due to migraines and panic attacks. Mother sought treatment with a licensed clinical social worker, however, as the court noted, the incidents and treatment occurred at least two years or more prior to trial, and Father had knowledge of Mother's mental and physical illness. Father testified he believed Mother to be a good mother, and there was no evidence presented at trial that Mother could not care for her children as a result of her mental and physical issues.

In contrast, there was evidence presented regarding Father's anger management issues, as well as his abuse of Mother. Father admitted he "probably" verbally abused Mother following the original dissolution, but denied any physical abuse during the marriage. Mother testified she is afraid of Father, and because of that she often conceded issues to avoid arguments. Mother's

mother also testified she believed Mother was afraid of Father and the fear was getting worse "[a]s time goes on." There was also evidence presented by witnesses from the community. In particular, two witnesses testified to incidents of being threatened by Father, and the police chief testified concerning a report of property damage by Father to the vehicle of another individual.[5] In addition, a former neighbor testified she witnessed Father push her son and kick her dog because the dog was barking.

Based upon the foregoing, we cannot conclude the trial court erred in resolving the factor relating to the physical and mental health of all individuals involved, including a history of abuse, in favor of Mother.

The trial court did resolve certain factors in favor of Father. Particularly, the court noted the relationship of the two minor children with their older sibling would be furthered by their residing with Father, and the children had extended family in the Ste. Genevieve area. The court further found the oldest child did not have a "great relationship with [Mother]." However, the court believed this was partially due to Father's behavior and partially due to the minor child's age and lack of maturity. In addition, the court concluded the fact that the children were well adjusted to the community in Ste. Genevieve weighed in favor of Father. The court also resolved the factor concerning the intention of either parent to relocate in favor of Father based upon Mother's relocation to Eureka. Finally, the court noted the children's wishes favored Father. However, while there were factors resolved in favor of Father, the weight of the evidence as discussed in detail above supported the trial court's conclusion that modification of the parenting plan for the two younger minor children was in the best interests of the children. Point four on appeal is denied.

---

[5] We note these incidents pre-dated the original dissolution, however, Section 452.410.1 allows for modification of custody on the basis of facts unknown to the court at the time of the prior decree. The original dissolution was entered following settlement between the parties, and therefore, this evidence was unknown to the court at the time.

### 4. Sole Legal Custody

In point two on appeal, Father claims the trial court erred in modifying legal custody to award Mother sole legal custody of two of the three minor children. According to Father, Section 452.410 requires proof of a change of circumstances and proof that the modification is necessary to serve the best interests of the children, and no such evidence was presented in this case.

Father is correct that Section 452.410.1 states, in relevant part, "the court shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Father himself alleged such a change of circumstances in his motion to modify, and there was sufficient evidence to support the trial court's modification of legal custody.

The evidence showed that communication between Father and Mother had deteriorated. Father did not consult Mother regarding issues concerning the minor children, and did not consult with her on decisions despite their joint legal custody of the minor children. Father enrolled the children in school in Ste. Genevieve without consulting Mother, as well as signing them up for extracurricular activities in the area. Father also removed the children from PSR classes at the local Catholic church. As the court noted, when asked whether he consulted Mother regarding these decisions, Father repeatedly replied, "She moved away," and indicated there was nothing to discuss because the children were in his care.

This breakdown in communication and cooperation alone is sufficient to constitute a change of circumstances warranting the modification of legal custody.[6] *Margolis v. Steinberg*, 242 S.W.3d 394, 398 (Mo. App. E.D. 2007) (citing *Hollins v. Hollins*, 13 S.W.3d 669, 672 (Mo. App. E.D. 2000)); *See also Hueckel v. Wondel*, 270 S.W.3d 450, 454 (Mo. App. S.D. 2008) (change of circumstances due to breakdown in communication and cooperation warranting modification of legal custody). Under joint legal custody, the parents are responsible for sharing decision-making regarding the health, education, and welfare of the minor children. *Leone v. Leone*, 917 S.W.2d 608, 614 (Mo. App. W.D. 1996). However, the parents' ability to communicate and cooperate is crucial in considering whether joint legal custody is proper. *Id*. If the parents are unable to make shared decisions concerning the welfare of the children, joint custody is not in the best interests of the children. *Id*. Such is the case here. As discussed above, there was sufficient evidence to support the trial court's modification of joint legal custody, awarding sole legal custody of the two minor children to Mother. Point two on appeal is denied.

## C.     Attorney's Fees

In points five and six on appeal, Father challenges the trial court's order requiring him to pay a portion of Mother's attorney's fees, and the trial court's refusal to order Mother to pay his fees. Father's arguments again center upon his claims that Mother failed to provide him with written notice of her intent to relocate, which is discussed above. Father also argues Section 452.377.13 serves to prohibit the court from ordering him to pay Mother's attorney's fees because he objected to the relocation in good faith. This argument is without merit.

---

[6] There was also sufficient evidence of additional changes in circumstances with respect to Mother's move to Eureka and its effect on her financial situation, her ability to stay at home, as well as the effect on the quality of life of the minor children, and the opportunities and schooling in Eureka.

Section 452.377.13 does provide that a party objecting in good faith to relocation "shall not be ordered to pay the costs and attorney's fees of the party seeking to relocate." The trial court cited this provision, and found that Father did not object to the relocation in good faith. Although we have some reluctance finding Father's objection was not in good faith, we need not consider that issue. Father was not responding to a notice of relocation within the procedure contemplated by Section 452.377. Instead, as noted above, Father himself initiated modification proceedings by filing a motion to modify under Section 452.410. Pursuant to Section 452.355.1, the trial court may "order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees . . . ." Thus, it is within the trial court's discretion to award attorney's fees in a modification case. *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 389 (Mo. banc 2001). To show the trial court abused its discretion in ordering Father to pay attorney's fees, Father must prove the court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice. *Id.*

The trial court noted that both parties caused "the incurrence of . . . excessive fees" as a result of their inability to communicate without the involvement of the trial court. However, the court stated after "careful consideration of all the issues, evidence and arguments," it was appropriate for Father to pay $12,500 of Mother's attorney's fees. The court noted Mother had incurred a total of $60,400 in attorney's fees. Mother was defending Father's motion to modify as well as maintaining her own cross-motion to modify. In addition, the record reflects fees were incurred for contempt and habeas corpus proceedings compelling Father to return the children to Mother following one visitation at the start of the case. In light of these facts, Father fails to

12

meet the burden of showing the trial court's award of only a portion of Mother's attorney's fees was an abuse of discretion.

In addition, Father claims the court erred in refusing to order Mother to pay his attorney's fees. He argues that pursuant to Section 452.377.5(3), Mother is required to pay his attorney's fees because she failed to provide notice of relocation to Father. As previously discussed, the present case originated from Father's own motion to modify. The trial court had discretion to award attorney's fees in the present case, and the court did not abuse its discretion in awarding Mother attorney's fees in the amount of $12,500 and refusing to order Mother to pay Father's attorney's fees. Points five and six on appeal are denied.

## D.    Child Support

In points three and seven on appeal, Father challenges the trial court's modification of his child support obligation to Mother. In point three, Father claims the trial court erred in modifying the child support amount because Mother failed to present evidence of a substantial and continuous change of circumstances that would make the original child support unreasonable. In point seven, Father claims the trial court erred in its calculation of the modified amount because it prepared incorrect Form 14s and improperly averaged several Form 14s to arrive at the final amount.

### 1.    Modification of Child Support

Pursuant to Section 452.370.1, the trial court may modify child support upon a showing of "changed circumstances so substantial and continuing as to make the terms unreasonable." Father argues there was no evidence of any substantial and continuing changes other than Mother's relocation to make the terms of the existing amount of child support unreasonable.[7]

_____

[7] Mother responds by arguing Father's point on appeal concerning modification should be dismissed because he failed to file the necessary documents for our review. While we agree Father failed to provide this Court with a

As the trial court noted, Father himself requested that child support be modified due to a substantial and continuing change in circumstances. Father correctly notes that the provision in Section 452.370.1 allowing for a prima facie showing of changed circumstances warranting modification of child support where the parties' financial circumstances result in a change of child support of twenty percent or more applies only when the existing child support is based on the presumed amount calculated under the child support guidelines. *Hueckel*, 270 S.W.3d at 456. The original amount of child support in the present case was not the presumed amount. However, where the statutory presumption does not apply, modification of child support may be appropriate upon a showing of a substantial and continuing change in the parties' respective financial status as well as changes in the children's needs. *Tally v. Bulen*, 193 S.W.3d 881, 882-83 (Mo. App. S.D. 2006) (internal citation omitted).

The evidence in the present case was that Father's income had increased significantly since the original decree. In addition, Mother's income decreased. Moreover, the evidence showed Father was originally ordered to pay the medical, dental, and school expenses for the three minor children and failed to consistently do so. Mother testified Father refused to pay certain expenses, and eventually she stopped asking him to pay them. Based upon this evidence, even absent the statutory presumption, there was sufficient evidence of substantial and continuing changes in the parties' respective financial status as well as the needs of the children to support modification of child support. Thus, the trial court did not err in finding that modification of child support was appropriate. Point three on appeal is denied.

significant number of trial exhibits containing evidence of his income and expenses, we are able to review this point based upon the evidence in the record before us.

## 2. Calculation of Modified Amount

In his seventh point on appeal, Father claims the trial court erred in its calculation of the modified amount of child support. Father specifically challenges the trial court's failure to consider Mother's shared expenses with her spouse, the trial court's adjustment to Mother's gross income for two children born of her second marriage, and the trial court's determination of a presumed amount of child support based upon an average of the presumed amounts from three separate Form 14 calculations.

In its original judgment, the trial court used a single Form 14 to calculate both Father's support obligation to Mother for the two younger minor children and Mother's support obligation for the minor child residing with Father. The court offset the amount Mother owed Father in support, and ordered Father to pay $1,129 per month to Mother. In response to Father's motion to amend the judgment, the trial court subsequently entered an amended judgment, recalculating the modified support amount to $1,000 per month. The trial court used a single Form 14 to determine the amount Mother owed Father for one minor child. However, the court used three Form 14s to arrive at an average amount for Father's child support obligation for the two minor children.

Pursuant to Missouri Supreme Court Rule 88.01,[8] "[t]here is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the correct amount of child support to be awarded in any judicial or administrative proceeding." "In making child support determinations, the trial court is required to determine the presumed correct child support amount pursuant to Rule 88.01 and Form 14." *Neal v. Neal*, 281 S.W.3d 330, 340 (Mo. App. E.D. 2009) (citing *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo. App. W.D. 1996)). This is a mandatory mathematical calculation. *Id.* After calculating the presumed

---

[8] All further references to Rules are to Missouri Supreme Court Rules (2012).

amount and considering the relevant factors, the trial court can then determine whether that amount is unjust or inappropriate. *Id.* (citing *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997)), Rule 88.01(b), Section 452.340.1 RSMo (Cum. Supp. 2011). Here, the trial court did not calculate a presumed amount of child support pursuant to a Form 14 amount. Instead, the court used the average of three different Form 14 calculations to arrive at the amount of Father's child support obligation. This procedure violates the clear dictates of Rule 88.01.

Father also claims the trial court erred in adjusting Mother's gross income for the two children born of her second marriage. The court credited Mother with amounts for "support obligation for other children" on the Form 14 calculation for her obligation to Father for one minor child, as well as on one of the three Form 14s used to arrive at the average amount of child support Father was to pay Mother for the two minor children.

Line 2c of Form 14 does allow for an adjustment to gross income for the monthly support obligation of a parent for any children primarily residing in his or her custody and not the subject of the proceeding. RCP Form 14, Directions, Line 2c. However, the caveat to line 2c provides that the amount of adjustment available to the moving parent in an action to increase or decrease the support payable under the existing order shall be the lesser of: "(1) The adjustment to which that parent was entitled for the particular child on line 2a or 2c when the existing order was entered, or (2) The adjustment to which that parent is entitled for the particular child on line 2c as a result of an order in another action entered after the existing order." RCP Form 14, Directions, Line 2c, CAVEAT.

Here, Mother filed a cross-motion to modify, seeking to modify child support. As a moving party, she was not therefore entitled to an adjustment for the children of her second marriage at the time the original support order was entered because the children were not born at

16

that time. *See Cross v. Cross*, 318 S.W.3d 187, 195 (Mo. App. W.D. 2010) (internal citation omitted). Thus, because the adjustment is limited to the lesser of the two options, Mother, as moving party cannot be entitled to an adjustment in the calculation of the modified amount of child support. *Id*. As a result, the trial court erred in adjusting Mother's child support obligation to Father for her support of the two children from her second marriage.[9]

In addition, we note Father's argument that the trial court failed to take into account the income of Mother's new husband is premature. As Father points out, only once the Form 14 calculation is completed should the court consider the income of a contributing spouse to determine whether the presumed amount is unjust or inappropriate. *See Elliott v. Elliott*, 920 S.W.2d 570 (Mo. App. W.D. 1996); *See also* Rule 88.01(a) and Section 452.340.1. Because, as discussed above, the trial court failed to properly arrive at a presumed amount of child support, the court could not have considered whether such an amount was unjust or inappropriate.

For the foregoing reasons, we find the trial court erred in its calculation of the modified amount of child support Father was ordered to pay to Mother. Therefore, we remand the cause with instructions to the trial court to calculate the presumed amount of child support pursuant to Rule 88.01 and Form 14. After calculating the presumed amount, the trial court may then consider the relevant factors to determine whether that amount is unjust or inappropriate. Point seven on appeal is granted.

### E. Anger Management

In his ninth and final point on appeal, Father claims the trial court erred in ordering him to undergo an anger management therapy course because the court did not have authority to do so and there was no evidence to support the court's order. We disagree.

---

[9] We also note that the trial court improperly applied such an adjustment on one of the three Form 14s used to calculate Father's modified support obligation.

As Mother notes, under Section 452.375.2(6), the court is required to consider the "mental and physical health of all individuals involved," in a custody determination. The statute further provides that, "[c]ustody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights . . . ."

Here there was sufficient evidence to demonstrate Father's anger management issues. As previously discussed, witnesses from the community testified to incidents of being threatened by Father, and a former neighbor testified she witnessed Father push her son and kick her dog because the dog was barking. Mother testified she was scared of him. Carol Papin, Mother's mother, also testified she believed Mother was afraid of Father and the fear was getting worse "[a]s time goes on."

Father's reliance on *Pilger v. Pilger*, 972 S.W.2d 628 (Mo. App. S.D. 1998) is misplaced. In *Pilger*, the court found the trial court improperly placed a condition precedent upon the father's visitation because the judgment required the father's visitation to be under such supervision and conditions as the mother determined to be necessary for the safety of the children. *Id*. at 630. This restriction was held to be too indefinite to be enforced because it was subjective and left the determination of compliance up to the mother rather than the trial court. *Id*.

Here, the trial court's condition that Father undergo an anger management therapy course within sixty days was not so indefinite and subjective as to be unenforceable. The court specified the course must be in person and not online and required Father to file a certificate of completion with the court. The trial court's requirements were objective and enforceable, and

Father was accountable to the trial court.  Therefore, we cannot conclude the trial court erred in ordering Father to undergo an anger management therapy course.  Point nine on appeal is denied.

### III.    CONCLUSION

The trial court's judgment ordering Father to pay modified child support in the amount of $1,000 per month to Mother is reversed and remanded for further proceedings consistent with this opinion.  In all other respects, the trial court's judgment is affirmed.

_____
ROBERT M. CLAYTON III, Chief Judge

Gary M. Gaertner, Jr., J., and
Philip M. Hess, J., concur.