

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| JAMIE LEE KROPF, | ) | No. ED101529 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Audrain County |
| vs. | ) | 09AU-DR00049-01 |
| | ) | |
| MATHEW ADAM JONES, | ) | Honorable Michael S. Wright |
| | ) | |
| Appellant. | ) | Filed: May 5, 2015 |

Mathew Adams Jones ("Father") appeals the trial court's judgment denying his motion to modify his child support obligation, finding Jamie Lee Kropf ("Mother") had not relocated with the parties' minor child, and ordering Father to pay a portion of Mother's attorney's fees. We affirm.

### I.     BACKGROUND

The parties were married in June 2006 and had a child together in June 2009 ("Child"). In March 2010, the trial court entered a judgment dissolving the parties' marriage, and an amended judgment was entered in May 2010. The amended dissolution judgment awarded Mother sole physical custody of Child, awarded Father visitation, awarded the parties joint legal custody, and ordered Father to pay Mother $1,200 per month in child support.

In determining Father's monthly child support obligation to be $1,200, the trial court imputed a monthly gross income of $2,080 to Mother. The court also found that Father, a

pipeline welder, had a monthly gross income of $11,801, an amount which included money Father received for rig pay and per diem pay.[1]  Using the parties' monthly gross incomes, the trial court found Father's Form 14[2] presumed child support obligation was $1,544 per month. However, the trial court found the presumed child support amount was unjust and inappropriate and instead ordered Father to pay Mother $1,200 per month in child support.

After the trial court entered its amended dissolution judgment, Father filed a motion to modify seeking to reduce his monthly child support amount and increase his visitation with Child.  With respect to child support, Father's motion alleged a substantial and continuing change in circumstances had occurred because there was a change in his income.  Father requested an increase in visitation in part because Mother had allegedly moved from her prior address and failed to give notice of the new address to Father.  Mother filed a counter-motion requesting, *inter alia*, attorney's fees.

Neither Father's motion to modify nor Mother's counter-motion requested the trial court to provide findings of fact or conclusions of law in its judgment.  A bench trial was held on the parties' motions in February 2014.  Father, Mother, and Jesse Deere were among the witnesses who testified at the trial.

Father testified at the bench trial that his taxable gross income had decreased since the amended dissolution judgment, because the Internal Revenue Service ("IRS") no longer deemed his rig pay and per diem pay as part of his gross income for tax purposes.  Father stated his taxable gross monthly wages were $8,033, and he also received a total of approximately $4,000 in rig pay and per diem pay each month.  Father testified his employer sometimes required him to travel for his job and incur employment-related expenses for work clothing, work truck

---

[1] Rig pay and per diem pay are explained three paragraphs below.
[2] All references to Form 14 are to the form as set forth in Missouri Supreme Court Rules of Civil Procedure (2014).

2

ownership and maintenance, work tools, mileage, lodging, and food. Father's testimony indicated that his rig pay and per diem pay were not dollar-for-dollar reimbursements for employment-related expenses Father incurred but instead represented a general allocation for anticipated expenses. Father testified he received rig pay at a rate of $17 per hour for each hour he worked for reimbursement of anticipated expenses for work clothing, owning and operating a work truck and tools, and mileage. Father also testified he received per diem pay at a rate ranging from $102.50 to $165 per day for reimbursement of anticipated expenses for out-of-town lodging and food. Although Father stated that his rig pay and per diem pay were no longer subject to federal income taxes at the time of the modification proceedings, Father admitted there was nothing else different about how he received rig pay and per diem pay at the time of the original dissolution proceedings.

Mother testified she and Child resided at Mother's parents' home in Mexico, Missouri following the parties' 2010 divorce and until the February 2014 bench trial on Father's motion to modify.

Deere testified at the bench trial that he was in a romantic relationship with Mother from 2010 to 2011. Deere also testified Mother and Child moved into his home in 2010 and they spent 50 to 75 percent of their time there. Deere stated his relationship with Mother was "rocky" and there were several breakups interspersed throughout their relationship. Deere also stated there would be nights Mother and Child would spend the night at Deere's home and then return to their permanent residence with Mother's parents. Deere admitted Mother never physically changed her address from her parents to Deere's address and most of Mother's personal property and belongings remained at her permanent residence with her parents.

In April 2014, the trial court entered a judgment denying Father's motion to modify his child support obligation, finding Mother had not relocated with Child, and ordering Father to pay a portion of Mother's attorney's fees. With respect to child support, the trial court found Father had not established a change in circumstances warranting modification, i.e., that Father had not established a substantial and continuing change in circumstances as to make the terms of the original child support award unreasonable. In making its determination, the trial court prepared two Form 14's. The only difference in the Form 14's was the trial court used two different calculations for Mother's reasonable work-related child care costs and Mother's child care tax credit. Both of the trial court's Form 14's found that Father's monthly gross income was $12,033 and Mother's monthly gross income was $2,271. Based upon those figures, one of the trial court's Form 14's calculated Father's presumed monthly child support obligation to be $1,457, and the court's other Form 14 calculated Father's presumed monthly child support to be $1,133. The trial court found both of those presumed child support amounts were unjust and inappropriate and, consistent with the amended dissolution judgment, the court ordered Father to continue to pay Mother $1,200 per month in child support.

With respect to Mother's alleged relocation, Father's proposed judgment requested the trial court to find "[Mother] relocated the principal residence of [Child] and did not provide notice to [Father] as required by Section 452.377 [ ] RSMo [2000[3]]." However, the trial court did not include that finding in its judgment and instead found Mother resided at her parents' home.

The trial court's judgment also ordered Father to pay Mother $3,500 in attorney's fees. Father appeals.

---

[3] Unless otherwise indicated, all further statutory references are to RSMo 2000.

## II.    DISCUSSION

Father raises three points on appeal.  Father's first point on appeal argues the trial court erred in finding he had not established a change in circumstances warranting a modification of his child support obligation.  Father's second point on appeal asserts the trial court erred in failing to find Mother had improperly relocated with Child.  Finally, Father's third point on appeal contends the trial court erred in ordering him to pay Mother $3,500 in attorney's fees.

### A.    General Standard of Review

As with any court-tried case, we review a trial court's judgment modifying a dissolution decree pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).  *Mehler v. Martin*, 440 S.W.3d 529, 531 (Mo. App. E.D. 2014).  Accordingly, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  *Id*.

Where, as in this case, neither party requested the trial court to make findings of fact, all fact issues upon which no specific findings are made are considered as having been found in accordance with the result reached by the trial court.  *Patz v. Patz*, 412 S.W.3d 352, 355 (Mo. App. E.D. 2013); Rule 73.01(c)[4].  Moreover, we view the evidence and inferences therefrom in the light most favorable to the judgment, and we disregard all contrary evidence and inferences.  *Potts v. Potts*, 303 S.W.3d 177, 184 (Mo. App. W.D. 2010).  "Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses."  *Id*. (quotations omitted).  Consequently, we defer to the trial court's credibility determinations.  *Mehler*, 440 S.W.3d at 534.  We also defer to the trial court's decision even if the evidence could support a different conclusion.  *King v. Bullard*, 257 S.W.3d 175, 182 (Mo. App. E.D. 2008).

---

[4] All references to Rules are to Missouri Supreme Court Rules (2014).

**B.      Child Support**

In Father's first point on appeal, he asserts the trial court erred in finding he had not

established a change in circumstances warranting a modification of his child support obligation.

We disagree.

**1.      Standard of Review, General Law, and Father's Arguments**

The determination as to whether to modify a parent's child support obligation "lies within

the discretion of the trial court, and the trial court's decision will be reversed only for abuse of

discretion or misapplication of the law." *Breuer v. Breuer*, 449 S.W.3d 409, 412 (Mo. App. E.D.

2014) (quotations omitted). An abuse of discretion occurs when the trial court's ruling is so

arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful

consideration. *Ferry v. Ferry*, 327 S.W.3d 599, 602 (Mo. App. E.D. 2010).

Section 452.370.1[5] provides in relevant part:

> [T]he provisions of any judgment respecting . . . support may be modified only
> upon a showing of changed circumstances so substantial and continuing as to
> make the terms [of the original award] unreasonable. In a proceeding for
> modification of any child support . . . judgment, the court, in determining whether
> or not a substantial change in circumstances has occurred, shall consider all
> financial resources of both parties . . ..

A party seeking modification of a child support award makes a prima facie showing of a

substantial and continuing change in circumstances where the application of the Form 14 child

support guidelines results in a change from the original award of child support by twenty percent

or more. *Id.*; *Breuer*, 449 S.W.3d at 413-14. "Once the party seeking modification has met this

burden, the court then determines the child support amount in conformity with criteria set forth

---

[5] We note that section 452.370 was amended effective August 28, 2014, but that amendment does not apply to this case because it was effective after the modification proceedings. Therefore, our reference to section 452.370 is to RSMo 2000.

in section 452.340 [RSMo Supp. 2012] and applicable supreme court rules." *Breuer*, 449 S.W.3d at 414 (quotations omitted).

In this case, Father argues he made a prima facie showing of a substantial and continuing change in circumstances because the application of Form 14, and particularly the calculation of his gross income, results in a change from the original award of $1,200 per month in child support by twenty percent or more. Father specifically claims the trial court erred in calculating his monthly gross income to be $12,033 because that amount included his rig pay and per diem pay, which totaled approximately $4,000 per month. Father argues his rig pay and per diem pay should not have been included as part of his gross income for purposes of his Form 14 child support calculation because, (1) they were payments for reimbursement of business expenses; and (2) the IRS made changes to the federal tax code since the time of the original dissolution proceedings and the IRS no longer considered Father's rig pay and per diem pay as gross income subject to federal income taxes.[6]

### 2. Father's Arguments and the Factual Circumstances of this Case are Similar to Those in *Gardner*

Father's arguments and the factual circumstances of this case are similar, though not identical, to those in *State ex rel. Scioto Cty. Child Support Enforcement Agency v. Gardner*, 680 N.E.2d 221 (Ohio Ct. App. 1996). In *Gardner*, the father argued the trial court erred in calculating his gross income for purposes of his child support obligation because the court failed to reduce father's gross income by the amount of expenses he incurred in his employment while

---

[6] For purposes of this appeal only, we assume the following propositions, because they are both undisputed by the parties, (1) the IRS made changes to the federal tax code since the time of the original dissolution proceedings; and (2) as of the 2013 tax year, which was the last tax year before the February 2014 bench trial in the modification proceedings, the IRS no longer considered Father's rig pay and per diem pay as gross income subject to federal income taxes.

working away from home, including expenses for work clothing, work tools, work truck maintenance, lodging, and food. *Id*. at 223-24, 227.

The father in *Gardner* argued on appeal that the trial court should have deducted his employment-related expenses from his gross income under a provision in the Ohio child support guidelines providing for a deduction of business expenses. *Id*. at 227. The Ohio provision stated "gross income" included "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." *Id*. (quotations omitted). Because the father did not claim to be self-employed, the proprietor of a business, or a joint owner of a partnership or closely held corporation, the Ohio Court of Appeals found the provision providing for a deduction of business expenses was not controlling. *Id*.

The father in *Gardner* also argued on appeal that the trial court should have deducted his employment-related expenses from his gross income because the expenses were excluded from his gross income on his federal tax return. *Id*. In other words, the father "attempt[ed] to analogize the child support calculation to a federal income tax calculation." *Id*. The Ohio Court of Appeals rejected the father's argument, holding the calculation of his gross income for purposes of his federal income taxes was irrelevant because the Ohio child support guidelines definition of "gross income" was more expansive than the federal tax code definition and included father's non-taxable income. *Id*. Therefore, the *Gardner* Court concluded the trial court did not abuse its discretion in failing to deduct the father's employment-related expenses from his gross income. *Id*.

8

While we recognize Missouri's Form 14 child support guidelines differ from Ohio's child support guidelines, Father asserts on appeal, similar to the father in *Gardner*, that the trial court erred in calculating his gross income for purposes of his child support obligation because the court failed to reduce his gross income by the monies he received from his employer for rig pay and per diem pay. Also like the father in *Gardner*, Father asserts his rig pay and per diem pay should not have been included as part of his gross income for purposes of his Form 14 child support calculation because, (1) they were payments for reimbursement of business expenses; and (2) those monies were excluded from his gross income on his federal tax return.

Here, Father testified his employer sometimes required him to travel for his job and incur employment-related expenses for work clothing, work truck ownership and maintenance, work tools, mileage, lodging, and food. Father's testimony indicated that his rig pay and per diem pay were not dollar-for-dollar reimbursements for employment-related expenses Father incurred but instead represented a general allocation for anticipated expenses. Father testified he received rig pay at a rate of $17 per hour for each hour he worked for reimbursement of anticipated expenses for work clothing, owning and operating a work truck and tools, and mileage. Father also testified he received per diem pay at a rate ranging from $102.50 to $165 per day for reimbursement of anticipated expenses for out-of-town lodging and food.

### a.      Father's "Business Expenses" Argument

Similar to the father in *Gardner*, Father argues the monies he received from his employer for anticipated employment-related expenses, i.e. rig pay and per diem pay, should not have been included as part of his gross income because they were payments received for reimbursement of business expenses and such payments are not considered to be part of the parent's gross income under Form 14. In support of this argument, Father cites to a portion of the Directions for Form

9

14, Line 1 which states, "*If a parent . . . is self-employed, in a sole proprietorship, or [in a] business with joint ownership*, 'gross income' is gross receipts minus the ordinary and necessary expenses incurred to produce such receipts" ("the expenses provision") (emphasis added by our Court).

Father asserts the expenses provision applies to him pursuant to *DeArriba v. DeArriba*, 100 S.W.3d 134 (Mo. App. E.D. 2003) and *In re Marriage of Harvey*, 48 S.W.3d 674 (Mo. App. E.D. 2001). However, in *DeArriba* and *Harvey*, our Court held the expenses provision applied to the calculation of a parent's gross income under Form 14 *where the parent testified that he was self-employed*. *DeArriba*, 100 S.W.3d at 137, 139-40; *Harvey*, 48 S.W.3d at 675, 676-77. In this case Father cites to no evidence in the record indicating he is self-employed. Therefore, *DeArriba* and *Harvey* are distinguishable. Moreover, consistent with the Ohio Court's decision in *Gardner*, we find the expenses provision inapplicable because Father cites no evidence in the record indicating he is self-employed, in a sole proprietorship, or in a business with joint ownership. *See Gardner*, 680 N.E.2d at 227.

> **b.     Father's "Federal Income Tax" Argument**

Father also argues the monies he received from his employer for anticipated employment-related expenses, i.e. rig pay and per diem pay, should not have been included as part of his gross income because those monies were excluded from his gross income on his federal tax return. Like the father in *Gardner*, Father is "attempt[ing] to analogize the child support calculation to a federal income tax calculation." *See id*. Father cites to no cases providing that the calculation of a parent's gross income for purposes of his child support obligation is the same as the calculation of his gross income for purposes of his federal tax obligation. Moreover, pursuant to the reasoning in *Gardner*, we find the calculation of Father's gross income for purposes of his

federal income taxes is irrelevant. *See id*. This is because Missouri's Form 14 definition of "gross income," like the definition of the term in the Ohio child support guidelines, is more expansive than the federal tax code definition and could include father's non-taxable employment-related benefits. *See id*.; *see also Jenkins v. Jenkins*, 704 A.2d 231, 235 (Conn. 1998) (in determining a parent's child support obligation, the definition of "gross income" found in the child support guidelines is the definition that is determinative rather than the state or federal tax code definition of the term).

The Directions for Form 14, Line 1 provide:

> *'Gross income' includes, but is not limited to*, salaries, wages, commissions, dividends, severance pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, social security disability benefits (SSD) due to a parent's disability, veterans' disability benefits and military allowances for subsistence and quarters.

(emphasis added). The Directions for Form 14, Line 1 also contain a general provision providing in relevant part, ". . . *significant employment-related benefits may be included, in whole or in part, in 'gross income' in appropriate circumstances*." ("General Provision") (emphasis added).

We initially find that Father's rig pay and per diem pay constitute "significant employment-related benefits" under the General Provision. Father's rig pay and per diem pay were significant because they totaled approximately $4,000 per month, almost one-third of all monies ($12,033) Father directly received from his employer each month. Additionally, Father's rig pay and per diem pay were "employment-related" benefits because they were financial resources from which Father personally benefitted and were generally alleged by Father to be expended for anticipated employment-related expenses. *See Buckner v. Jordan*, 952 S.W.2d 710, 712 (Mo. banc 1997) (per diem payments alleged by a parent to be expended for

11

employment-related travel expenses are an employment-related benefit); *Keller v. Keller*, 224 S.W.3d 73, 80 (Mo. App. S.D. 2007) (employment-related benefits include financial resources from which a parent personally benefits).

The use of the term "may" in the General Provision indicates that it is within the discretion of the trial court whether or not to include significant employment-related benefits in calculating a parent's gross income and corresponding presumed child support obligation. *Smith v. White*, 114 S.W.3d 407, 412-13 (Mo. App. W.D. 2003); *see also McFall v. McFall*, 271 S.W.3d 22, 26, 26 n.3 (Mo. App. S.D. 2008). Accordingly, a trial court's decision whether to include significant employment-related benefits in calculating a parent's gross income is reviewed for an abuse of discretion. *Smith*, 114 S.W.3d at 412-13; *McFall*, 271 S.W.3d at 26.

Father acknowledges the General Provision but relies on language in Comment G to the Directions for Form 14, Line 1 which provides, "[n]on-taxable income and significant employment-related benefits may be converted in appropriate circumstances to 'gross income' through applicable federal and state income tax tables." Father claims that because the trial court did not convert his rig pay and per diem pay to gross income through applicable federal and state income tax tables pursuant to Comment G, the trial court erred in including those funds as part of his gross income. Father apparently cites to Comment G for the proposition that the use of "applicable federal and state income tax tables" provides the exclusive means and appropriate circumstances for the inclusion of significant employment-related benefits in a parent's gross income under Form 14. In light of the language in General Provision, we decline to interpret Comment G in this fashion.[7]

---

[7] In its current form, Comment G is of little assistance to courts, since the term "applicable federal and state income tax tables" is not defined or explained in Form 14. In fact, this Court can find no Missouri case, rule, or statute which defines or explains the term.

Importantly, the General Provision does not mention the term "applicable federal and state income tax tables," does not limit appropriate circumstances to those involving the use of such tax tables, or does not otherwise reference Comment G. Instead, the General Provision simply provides "significant employment-related benefits may be included . . . in 'gross income' in appropriate circumstances." In other words, the Directions to Form 14 do not exclusively define what constitutes "appropriate circumstances" justifying the inclusion of significant employment-related benefits as part of a parent's gross income. *See Thorp v. Thorp*, 390 S.W.3d 871, 879 (Mo. App. E.D. 2013) (similarly holding with respect to other portions of the General Provision which are not at issue in this case). As a result, "a trial court has a difficult task in determining the monthly gross income of a party who is compensated by means other than an established, recurring [traditional] salary." *Id*. at 879-80 (quotations omitted).

In order to give trial courts some guidance in this area in the future, we hold that "appropriate circumstances" justifying the inclusion of significant employment-related benefits as part of a parent's gross income under the General Provision include such circumstances where such benefits could have a positive impact on the parent's ability to support his or her children. *See* Comment A to the Directions for Form 14, Line 1 ("income" for purposes of computing a parent's presumed child support amount "consists of a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children"); *See In re Marriage of Bottorff*, 221 S.W.3d 482, 487 (Mo. App. S.D. 2007) ("[p]arents have a statutory duty to support their minor children commensurate with their ability to pay"). In making this holding, we note that a parent's ability to pay child support is not defined as his income minus all other expenses. *Id.* at 488. Instead, in determining ability to pay, the focus is

13

on whether the individual after making required child support payments can meet his remaining needs and obligations. *Id.*

In this case, Father has not demonstrated his alleged employment-related expenses relating to rig pay and per diem pay or changes to the federal tax code since the time of the amended dissolution judgment negatively affected his ability to pay the original child support award of $1,200 per month or negatively affected his ability to meet his remaining needs and obligations.[8] Although Father testified that his rig pay and per diem pay were no longer subject to federal income taxes at the time of the modification proceedings, Father admitted there was nothing else different about how he received rig pay and per diem pay at the time of the original dissolution proceedings. In addition, Father's testimony indicated that his rig pay and per diem pay were not dollar-for-dollar reimbursements for employment-related expenses Father incurred but instead represented a general allocation for anticipated expenses. Importantly, Father's brief does not allege he *actually incurred a specific amount* of employment-related expenses each month, neither Father nor Mother requested the trial court to make findings of fact, and the trial court did not make any specific findings with respect to the amount of employment-related expenses Father actually incurred each month. Therefore, all fact issues pertaining to rig pay and per diem pay are considered as having been found in accordance with the trial court's determination that Father had not established a substantial and continuing change in circumstances as to make the terms of the original child support award unreasonable. *See Patz*, 412 S.W.3d at 355 and Rule 73.01(c) (where neither party requests the trial court to make findings of fact, all fact issues upon which no specific findings are made are considered as

---

[8] We note Father conceded during oral argument that because his rig pay and per diem pay were no longer subject to federal income taxes, he received a larger amount of his rig pay and per diem pay at the time of the modification proceedings than he did at the time of the original dissolution proceedings, when he was taxed on those monies. Therefore, arguably the change in the federal tax code since the time of the amended dissolution judgment positively affected Father's ability to pay the original child support award of $1,200 per month and positively affected his ability to meet his remaining needs and obligations.

14

having been found in accordance with the result reached by the trial court). Under these circumstances, we hold it was within the trial court's discretion to include Father's rig pay and per diem pay in calculating his Form 14 gross income[9] and the trial court did not err in finding Father had not established a change in circumstances sufficient to support modification of his child support obligation. *See In re Marriage of Lindhorst*, 347 S.W.3d 474, 476 (Mo. banc 2011) ("[c]hanged circumstances sufficient to support modification . . . must . . . show that the prior decree is unreasonable"). Point one is denied.

## C.     Mother's Alleged Relocation

In his second point on appeal, Father contends the trial court erred in failing to find Mother had improperly relocated with Child. Father's motion to modify requested an increase in his visitation with Child in part because Mother had allegedly moved with Child from her prior address and failed to give notice of the new address to Father. Additionally, Father's proposed judgment requested the trial court to find "[Mother] relocated the principal residence of [Child] and did not provide notice to [Father] as required by section 452.377 [ ]." The trial court did not include that finding in its judgment but instead found Mother resided at her parents' home.

---

[9] "Child support calculations depend on the particular facts and circumstances of each case[.]" *Gardner*, 680 N.E.2d at 227 n.4. Accordingly, our Court's holding that the trial court did not err in including Father's significant employment-related benefits as part of his Form 14 gross income under the circumstances of this case does not establish a rule to be applied in all others. *See id*. (similarly finding); *Smith*, 114 S.W.3d at 412-13 (a trial court is not obligated to include significant employment-related benefits as part of a parent's Form 14 gross income in every case). There may be circumstances, such as when the record supports a finding that a parent had significant, actually-incurred work-related expenses, where a parent adequately demonstrates that including his non-taxable income and significant employment-related benefits in his Form 14 gross income negatively affects his ability to pay child support or negatively affects his ability to meet his remaining needs or obligations; parties to a child support action have the ability to argue that largely factual issue and request the trial court to make findings of fact and conclusions of law on that issue. A trial court's findings of fact and conclusions of law relating to the discretionary decision whether or not to include significant employment-related benefits in a parent's gross income should be supported by sufficient, competent evidence in the record. *See Krepps v. Krepps*, 234 S.W.3d 605, 617-18 (Mo. App. W.D. 2007) (a trial court's decision to include financial benefits in a parent's gross income for purposes of Form 14 is not erroneous where it is supported by sufficient, competent evidence in the record). Moreover, "[j]udging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses." *Potts*, 303 S.W.3d at 184 (quotations omitted).

Section 452.377.2 provides in relevant part, "Notice of a proposed relocation of the residence of the child . . . shall be given in writing by certified mail, return receipt requested, to any party with custody or visitation rights." "Relocation" is defined as "a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence." Section 452.377.1. A court shall consider a parent's failure to provide notice of a proposed relocation of a child as a factor in determining whether visitation should be modified. Section 452.377.5(1).

In this case, Father claims the trial court erred in failing to find Mother changed Child's principal residence and did not give Father the notice required by section 452.377. Father asserts the testimony of Jesse Deere, who was in a romantic relationship with Mother from 2010 to 2011, supports a finding that Mother relocated Child's residence. Father points to Deere's testimony that Mother and Child moved into his home in 2010 and that they spent 50 to 75 percent of their time there.

However, Deere also testified his relationship with Mother was "rocky" and there were several breakups interspersed throughout their relationship. Deere stated there would be nights Mother and Child would spend the night at Deere's home and then return to their permanent residence with Mother's parents. Deere admitted Mother never physically changed her address from her parents to Deere's address and most of her personal property and belongings remained at her permanent residence with her parents. Additionally, Mother testified she and Child resided at Mother's parents' home in Mexico, Missouri following the parties' 2010 divorce and until the February 2014 bench trial on Father's motion to modify.

Father's focus on an isolated portion of Deere's testimony ignores our standard of review. In a court-tried case, we defer to the trial court's decision even if Deere's testimony could

16

support a different conclusion. *King*, 257 S.W.3d at 182. Moreover, our standard of review requires us to view the evidence and inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Potts*, 303 S.W.3d at 184. The trial court's judgment indicates the court found Deere's testimony that Mother spent 50 to 75 percent of her time at his home was not credible and did not establish that Mother changed the principal residence of Child for a period of ninety days or more (the time period required to establish relocation under section 452.377.1). *See Patz*, 412 S.W.3d at 355 and Rule 73.01(c) (where, as in this case, neither party requests the trial court to make findings of fact, all fact issues upon which no specific findings are made are considered as having been found in accordance with the result reached by the trial court). "Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses." *Potts*, 303 S.W.3d at 184 (quotations omitted). We defer to the trial court's credibility determinations. *Mehler*, 440 S.W.3d at 534. Pursuant to our standard of review, the trial court did not err in finding Mother had not relocated with Child. Point two is denied.

## D.     Attorney's Fees

In his third and final point on appeal, Father asserts the trial court erred in ordering him to pay Mother $3,500 in attorney's fees. We disagree.

We review an award of attorney's fees for abuse of discretion. *Schubert v. Schubert*, 366 S.W.3d 55, 75 (Mo. App. E.D. 2012). An abuse of discretion occurs when the trial court's ruling is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Ferry*, 327 S.W.3d at 602.

17

A trial court may award attorney's fees after considering "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action[.]" Section 452.355.1. "The trial court is considered an expert as to the necessity, reasonableness, and value of attorney's fees and thus, the trial court's decision is presumptively correct." *Schubert*, 366 S.W.3d at 75 (quotations omitted).

In this case, the trial court found that Father's monthly gross income was $12,033 and Mother's monthly gross income was $2,271. Because Father had a considerably higher income than Mother, he had a greater ability to pay attorney's fees. Therefore, the trial court did not abuse its discretion in ordering Father to pay Mother $3,500 in attorney's fees. *See Russell v. Russell*, 210 S.W.3d 191, 199 (Mo. banc 2007) (finding no abuse of discretion under similar circumstances and holding "one party's greater ability to pay is sufficient to support an award of attorney's fees"). Point three is denied.

## III. CONCLUSION

The trial court's judgment denying Father's motion to modify his child support obligation, finding Mother had not relocated with the parties' minor child, and ordering Father to pay a portion of Mother's attorney's fees is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

18